# Richmond

## CECIL G. YEATTS v. RICHARD A. MINTON.

November 30, 1970.

Record No. 7206.

Present, All the Justices.

*Reno S. Harp, III, Assistant Attorney General (Nathan H. Smith; J. Calvitt Clarke, Jr.; Sands, Anderson, Marks & Clarke, on brief) for plaintiff in error.*

*W. Park Lemmond, Jr. (Stokes and Lemmond, on brief), for defendant in error.*

GORDON, J., delivered the opinion of the court.

Plaintiff Richard A. Minton brought this action against defendant Cecil G. Yeatts for false imprisonment. Yeatts appeals from an adverse judgment for $700, entered on a jury verdict. The question is whether the evidence supports the verdict.

On December 2, 1967, Yeatts, a resident of Chesterfield County who is regularly employed in Richmond, was on duty as a special game warden in Charles City County. The regular game warden, who was ill, had instructed Yeatts to watch for persons "jacklighting

deer"[1] on a farm known as the "academy" because the farm manager had asked the warden to keep the farm under surveillance. So Yeatts parked his vehicle at a point overlooking a large field on the farm.

At about 8:30 p.m., more than two and a half hours after sunset, Yeatts saw a truck driving slowly through the field, apparently proceeding along a rutted dirt road. The truck turned from time to time so that its headlights shone across the field. Yeatts knew that deer frequented the area; he had often seen deer in the field and along the dirt road.

Yeatts drove his vehicle to a grain barn on the academy property where the truck had stopped after crossing the field. When Yeatts stopped behind the truck and turned on his flashing lights, the driver of the truck alighted and walked toward Yeatts. The driver wore two-ply cotton work shirt and trousers and leather bedroom shoes. He was a stranger to Yeatts.

Yeatts, who was wearing a game warden's uniform and badge, asked the driver of the truck, "[w]hat are you doing over here shining your lights over the field hunting deer". He answered that he was the caretaker of the property and was merely attending to his chores.

In the cab of the truck Yeatts found a shotgun with one number 8 shell in the chamber and one in the magazine. A bird dog and a puppy were in the truck.

Yeatts asked the driver of the truck for identification, but he did not have a driver's or hunting license or any other means of identification on his person. Yeatts then told the driver to come with him. Pointing to his "patched pants" and "bedroom shoes", the driver protested "rid[ing] over the country dressed like that". He also demurred at leaving the puppy in the truck. The driver of the truck asked that Yeatts accompany him to his home so that his wife might identify him, or that Yeatts accompany him to a telephone he said was in a vacant house near the barn.

Instead, Yeatts took the suspect to the game warden's house, where he was identified as Richard A. Minton, the manager of the academy property. Yeatts then returned Minton to his truck at the barn, where they parted company. Shortly thereafter Minton brought this action against Yeatts for false imprisonment.

---

[1] The colloquial expression "jacklighting deer" refers to a kind of illegal deer hunting. "The illegal hunters ride along in an automobile and shine a light across the fields until the eyes of a deer are spotted. The light mesmerizes the deer and they can be easily shot." *Stephens* v. *Lindsey*, 304 F. Supp. 203, 204 (S.D. Ga. 1969).

We will assume that Yeatts arrested Minton when he told Minton to come with him. The facts known to Yeatts at that time, as we have stated them, are not contradicted. Yeatts did not then know that the person he arrested was the manager of the academy property, much less that this was the person who had asked the game warden to keep the property under surveillance. And Yeatts did not know that this person had crossed the field and stopped at the grain barn to get feed for horses, or that this person had a shotgun and dogs with him because he had been hunting birds during the day.

Jacklighting deer is made a misdemeanor under each of the following statutes:

"§ 29-144.2. *Killing deer or elk by use of certain lights; acts raising presumption of attempt to kill.*—Any person who kills or attempts to kill any deer or elk between a half hour after sunset on any day and a half hour before sunrise the following day by use of a light attached to any vehicle or a spotlight or flashlight shall be guilty of a misdemeanor. . . . The flashing of a light attached to any vehicle or a spotlight or flashlight from any vehicle between a half hour after sunset on any day and a half hour before sunrise the following day by any person or persons, then in possession of a rifle, shotgun, crossbow, or bow and arrow or speargun, without good cause, shall raise a presumption of an attempt to kill deer or elk in violation of this section. * * *"

Va. Code Ann. § 29-144.2 (1969).

"§ 29-144.4. *Employment of lights under certain circumstances upon places used by deer or elk.*—Any person in any vehicle and then in possession of any rifle, shotgun, crossbow, bow and arrow or speargun who, between a half hour after sunset on any day and a half hour before sunrise the following day, employs a light attached to such vehicle or a spotlight or flashlight to cast a light beyond the water or surface of the roadway upon any place used by deer or elk shall be guilty of a misdemeanor. * * *"

Va. Code Ann. § 29-144.4 (1969).

Under Code § 29-32, a game warden is empowered, upon displaying his badge, "to arrest any person found in the act of violating" either statute. So in enforcing the game laws, a game warden has the same authority conferred upon a police officer to arrest a person who commits a misdemeanor in his presence, *Jordan* v. *Commonwealth,*

207 Va. 591, 151 S.E.2d 390 (1966); *Byrd* v. *Commonwealth*, 158 Va. 897, 164 S.E. 400 (1932).

An officer has the duty to arrest a person who commits a misdemeanor in his presence, even though the officer has no arrest warrant. *Norfolk & Western Ry. Co.* v. *Haun*, 167 Va. 157, 164, 187 S.E. 481, 484 (1936). And an arrest, though warrantless, is valid where the officer had probable cause to believe that a misdemeanor was committed in his presence, even though the action he observed did not in fact constitute a misdemeanor. *Miller* v. *State*, 462 P.2d 421 (Alas. 1969); *United States* v. *Cumberland*, 262 A.2d 341 (C.A. D.C. 1970); *Prosser* v. *Parsons*, 245 S.C. 493, 141 S.E.2d 342 (1965); *State* v. *Fidelity & Casualty Co. of N.Y.*, 120 W. Va. 593, 199 S. E. 884 (1938); *see Call* v. *United States*, 417 F.2d 462 (9th Cir. 1969); *United States* v. *Pizzarello*, 386 F.2d 177 (2d Cir. 1967); *Stephens* v. *Lindsey*, 304 F. Supp. 203 (S.D. Ga. 1969).

In *Prosser* v. *Parsons, supra,* the defendant game warden arrested Prosser, charging him with illegal deer hunting at night, a misdemeanor under the South Carolina game laws. After the grand jury returned a "No Bill", Prosser brought suit for false imprisonment. The trial court entered judgment for plaintiff Prosser on a jury verdict.

The pertinent facts leading to Prosser's arrest, as set forth in the opinion of the Supreme Court of South Carolina, were:

> "At approximately 1:30 A.M., plaintiff's car was observed by some of the officers, but not defendant, travelling at a slow rate of speed to and fro along the highway with a light shining therefrom at angles into the woods. At one time when another car approached, plaintiff's car pulled over and slowed down and the occupants stopped shining the lights; however, once the other automobile had passed, they again started to shine the lights into the woods. The Game Wardens had two-way radios and were keeping each other informed of what occurred. Defendant, upon receiving certain information over his radio, left his stake-out position and proceeded in the direction of plaintiff. When he arrived, plaintiff parked his car on the side of the highway and was observed to have a shotgun loaded with buckshot, together with 2 flashlights, one of the type with a wire attached to the cigarette lighter."

*Id.* at 499-500, 141 S.E. 2d at 346.

Being of opinion "that the only reasonable inference from the testi-

mony [was] that the acts of the plaintiff, committed in the presence of the officers, reasonably appeared to constitute a violation of [the state game laws]", the Supreme Court of South Carolina reversed the judgment and entered final judgment for the game warden.

We hold that the only reasonable inference from the testimony in this case is that Minton's acts, committed in Yeatts's presence, reasonably appeared to constitute a violation of Virginia Code §§ 29-144.2 and -144.4. What Yeatts saw, when he observed Minton's truck while it was crossing the field and when he saw the shotgun in the truck, gave him probable cause to believe that Minton was committing the misdemeanor of illegal night hunting in Yeatts's presence. Yeatts was therefore authorized to take Minton into custody, at least while investigating the question of good cause for Minton's actions. Because the arrest was legal, Minton cannot maintain an action for false imprisonment.

Nevertheless, Minton's counsel relies upon *Zayre, Inc.* v. *Gowdy*, 207 Va. 47, 147 S.E.2d 710 (1966), *Montgomery Ward & Co.* v. *Wickline*, 188 Va. 485, 50 S.E.2d 387 (1948) and *Crosswhite* v. *Barnes*, 139 Va. 471, 124 S.E. 242 (1924). In *Zayre* we said: "In an action for false imprisonment, as distinguished from an action for malicious prosecution, the good faith of a defendant in causing the arrest, or probable cause therefor, is no defense to a claim for actual or compensatory damages sustained in consequence thereof." 207 Va. at 53, 147 S.E.2d at 715, quoting from *Montgomery Ward & Co.* v. *Wickline, supra,* at 490, 50 S.E.2d at 389. Minton's counsel therefore argues that probable cause for an arrest constitutes no defense to an action for false imprisonment, but merely a bar to punitive damages, which were not awarded in this case.

*Zayre, Montgomery Ward* and *Crosswhite* involved, however, warrantless arrests for acts that were not committed in the officers' presence. Whether or not the officers had probable cause to believe that misdemeanors had been committed, the arrests in those cases were not lawful. But where, as in this case, an officer observes acts that give him reasonable cause to believe a misdemeanor has been committed in his presence, an arrest is lawful. A person can be falsely imprisoned despite probable cause for his arrest; he cannot be falsely imprisoned pursuant to a lawful arrest.

We reverse the judgment appealed from and enter final judgment for the defendant, Cecil Yeatts.

*Reversed and final judgment.*