## Richmond

### MICHAEL DeCHENE

### v.

### GERALD SMALLWOOD

Record No. 811210.

January 20, 1984.

Present: All the Justices.

*Robert Lyndon Howell, Assistant County Attorney (David T. Stitt, County Attorney*, on brief), for appellant.
*Gerald E. Smallwood, pro se*, for appellee.

CARRICO, C.J., delivered the opinion of the Court.

In the trial court, Gerald Smallwood recovered three judgments totalling $7,025.00 against Michael DeChene, a Fairfax County police officer, for false imprisonment, assault and battery, and conversion of an automobile. Concluding that the judgments are erroneous, we reverse.

This controversy arose out of a minor traffic accident which occurred on March 29, 1979, when Smallwood's automobile and another car collided on a Fairfax County highway. Officer DeChene was dispatched to investigate the accident. Finding the two vehicles locked together, DeChene radioed for a tow truck. In response, a tow truck operated by Dallas Lunceford arrived and separated the two vehicles. At this point, DeChene left the scene.

An argument arose between Smallwood and Lunceford concerning the $20.00 fee Lunceford demanded for his services. Unable to settle the matter at the scene, the two "adjourned" to a parking lot to "examine [the] situation." When Smallwood persisted in his refusal to pay, Lunceford called for Officer DeChene to report to the parking lot.

Upon DeChene's arrival, Lunceford stated that Smallwood had refused to pay the fee for the tow truck and that he, Lunceford, was "going to take [Smallwood's] car back because he [had] a right to it." Smallwood made comments about his constitutional rights and reiterated his refusal to pay. DeChene then stated he would arrest Smallwood for defrauding a garage keeper unless Lunceford's fee was paid. When Smallwood again refused to pay, DeChene arrested, searched, and handcuffed him. DeChene also impounded Smallwood's car and directed Lunceford to tow it from the parking lot.

DeChene took Smallwood to the Fairfax County Adult Detention Center and secured from a magistrate a warrant charging Smallwood with defrauding a garage keeper. On May 18, 1979, with the Commonwealth's attorney prosecuting the case, Smallwood was tried on the charge in general district court and acquitted.[1]

---

[1] Smallwood was arrested and prosecuted under the following statute:

§ 18.2-189. Defrauding garage keeper.—Whoever stores a motor vehicle with any person, firm or corporation engaged in the busines of conducting a garage for the:

1. Storage of motor vehicles;
2. Furnishing supplies to motor vehicles; or
3. Alteration or repair of motor vehicles,

In connection with his impoundment of Smallwood's car, DeChene had a "Vehicle Tow-In and Inventory Record" prepared. This document stated that the car could be released upon proof of ownership and payment of towing and storage charges. Although Smallwood demanded return of the car, he did not pay the towing and storage charges, and the vehicle was not returned to him.

In deciding this case, the trial court indicated that a police officer may make an arrest for a misdemeanor committed in his presence where, although he misperceives the facts he observes, "those facts could reasonably be seen to conform to [the] law," but not where he mistakenly believes the law has made criminal the conduct he observes. In other words, the court found that, in making an arrest, a police officer is protected from civil liability for a mistake of fact but not for a mistake of law. Proceeding on this basis, the court held that Officer DeChene's arrest of Smallwood was unlawful because the officer mistakenly believed Code § 18.2-189 included the word "services" and made a crime of a motorist's refusal to pay a garageman's towing fee.

The trial judge apparently believed that our decision in *Yeatts* v. *Minton*, 211 Va. 402, 177 S.E.2d 646 (1970), created the mistake of fact/mistake of law dichotomy he found in Virginia law. There, we said:

> An officer has the duty to arrest a person who commits a misdemeanor in his presence, even though the officer has no arrest warrant. . . . And an arrest, though warrantless, is valid where the officer had probable cause to believe that a misdemeanor was committed in his presence, even though the action he observed did not *in fact* constitute a misdemeanor.

*Id.* at 405, 177 S.E.2d at 648 (citations omitted) (emphasis added).

and obtains storage, supplies, alterations or repairs for such motor vehicle, without having an express agreement for credit, or procures storage, supplies, alterations or repairs on account of such motor vehicle so stored, without paying therefor, and with the intent to cheat or defraud the owner or keeper of such garage; or with such intent obtains credit at such garage for such storage, supplies, alterations or repairs through any misrepresentation or false statement; or with such intent removes or causes to be removed any such motor vehicle from any such garage while there is a lien existing thereon for the proper charges due from him for storage, supplies, alterations or repairs furnished thereon, in accordance with the provisions of § 43-32 or § 43-33 of this Code shall be guilty of a Class 2 misdemeanor.

The mistake of fact involved in *Yeatts* consisted of the arresting officer's incorrect belief that the accused was "jacklighting deer," an offense under the game laws, when in fact he was engaged in perfectly legal activity. We held that because the accused's actions "reasonably appeared" to constitute a violation of the game laws, the arrest was lawful. *Id.* at 406, 177 S.E.2d at 649.

Because *Yeatts* involved only a mistake of fact, we did not discuss whether any set of circumstances would uphold an arrest against an alleged mistake of law. Nothing in *Yeatts* suggests, therefore, that had the officer's mistake been one of law, *e.g.*, an incorrect belief that "jacklighting deer" had been made a crime when it had not, the arrest necessarily would have been unlawful.

■■■ We believe an arrest resulting from a mistake of law should be judged by the same test as one stemming from a mistake of fact, *viz.*, whether the arresting officer acted "in good faith and with probable cause." *Pierson* v. *Ray*, 386 U.S. 547, 555 (1967). This test "has been consistently read as meaning good faith and 'reasonable belief' in the validity of the arrest." *Bivens* v. *Six Unknown Named Agents of Fed. Bur. of Narc.*, 456 F.2d 1339, 1347 (2d Cir. 1972).

> [T]o prevail [under this test] the police officer need not allege and prove probable cause in the constitutional sense. The standard governing police conduct is composed of two elements, the first is subjective and the second is objective. Thus the officer must allege and prove not only that he believed, in good faith, that his conduct was lawful, but also that his belief was reasonable. And so . . . *it is a defense to allege and prove good faith and reasonable belief in the validity of the arrest* . . . and in the necessity for carrying out the arrest . . . in the way the arrest was made. . . . [A]s a matter of constitutional law and as a matter of common sense, a law enforcement officer is entitled to this protection.

*Id.* at 1348 (emphasis added). While *Bivens* involved federal law enforcement agents, the "good faith and reasonable belief" defense is available to state law enforcement officials as well. *Hill* v. *Rowland*, 474 F.2d 1374, 1377 (4th Cir. 1973).

■■■ Smallwood argues, however, citing *Crosswhite* v. *Barnes*, 139 Va. 471, 124 S.E. 242 (1924), that under Virginia law, "good faith is no answer to [a false imprisonment] claim." But, as we pointed out in our *Yeatts* opinion, *Crosswhite* involved a warrant-

less arrest for a misdemeanor not committed in the officer's presence. Hence, we said, even if the officer in *Crosswhite* had probable cause to believe that a misdemeanor had been committed, the arrest was nonetheless unlawful. *Yeatts*, 211 Va. at 406, 177 S.E.2d at 649. Here, the conduct of Smallwood which prompted his arrest occurred in Officer DeChene's presence; therefore, the legality of the arrest will turn on whether Officer DeChene acted in good faith and with reasonable belief in the validity of the arrest.

The trial judge found that Officer DeChene "was acting in good faith and was attempting . . . to effect a reasonable solution to the dispute between the operator of the tow truck and [Smallwood]." The judge also stated:

> Now, Officer De Chene has testified that he believed that [Code § 18.2-189] was operable and effective and that he based his arrest of Mr. Smallwood on that statute; and I accept that fact. I believe . . . that Officer De Chene believed that to be the case as he made the arrest.
>
> . . . .
> The situation here is that Officer De Chene believed that the law allowed him to make an arrest for services rendered by a garageman when, in fact, it did not.

We approve the trial judge's findings that Officer DeChene acted in good faith and that the officer believed Code § 18.2-189 was "operable and effective" with respect to the dispute between Lunceford and Smallwood. We would go one step further, however, and hold there was a reasonable basis for Officer DeChene's belief that Code § 18.2-189 was operable and effective in the circumstances.

As part of his duties, Officer DeChene reported to the scene of an accident in which Smallwood was involved; the trial court found there was "an implication at least and a possible admission by Mr. Smallwood that he caused [the accident]." DeChene determined that it was necessary to call a tow truck to separate the two vehicles involved in the accident; the trial court found that Smallwood "implicitly . . . joined in the ordering of [the] tow truck." Hence, there was sufficient basis for Officer DeChene to believe that Smallwood was responsible for the services of the tow-truck operator. Yet, Smallwood refused to pay for those services.

■ While Code § 18.2-189 does not mention either the term "tow truck" or the word "services," it is common knowledge that tow-truck services are necessary in many highway accidents and that often a damaged vehicle must be towed to a garage before it can be stored, supplied with parts, altered, or repaired. Hence, in many cases, towing services are essential to the practical operation of Code § 18.2-189. Although we do not decide that towing services are in fact included in Code § 18.2-189, we believe it is fairly arguable that such services are implicitly included in the statute's provisions; hence, there was a reasonable basis for Officer DeChene's belief in the applicability of the statute and the validity of his arrest of Smallwood.

■ The trial court held that because the arrest was unlawful, Officer DeChene had falsely imprisoned Smallwood, had committed an assault and battery upon him, and had wrongfully impounded his car. Because we find the arrest not unlawful, the trial court's holdings and judgments in all three respects must be reversed. Final judgment will be entered here in favor of Officer DeChene on all three claims.[2]

*Reversed and final judgment.*

---

[2] Smallwood has assigned a number of cross-errors. Because, however, he did not assign the cross-errors timely, we will not consider them.

Rule 5:27 provides in pertinent part:

> *Within fourteen days* after the date on which [a] copy of the petition [for appeal] is mailed or delivered to counsel for the appellee, he may file a written brief in opposition to granting the appeal and he may include in his brief assignments of cross-error. No cross-error not *then* assigned will be noticed by this Court. [Emphasis added.]

Unquestionably, the word "then" in the second sentence of the quotation refers to the fourteen-day period fixed in the first sentence. And, while the first sentence is expressed in permissive terms (an appellee in a civil case may forego filing a brief in opposition), the second sentence is couched in jurisdictional language, demonstrating that cross-error, when assigned, must be included in a brief in opposition filed within the fourteen-day period fixed in the first sentence.

Smallwood did not file his brief in opposition within the fourteen-day period. Instead, without indicating he intended to assign cross-error, he moved for and obtained from this Court an extension of time within which to file the brief, and he filed it well beyond the fourteen-day period.

Had Smallwood indicated in his motion for extension that he intended to assign cross-error, the motion would have been denied. This Court's granting of the motion under the circumstances did not operate to extend the time for assigning cross-error, and, therefore, the assignments were filed untimely.