COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Willis and Elder
Argued at Richmond, Virginia


THOMAS COLE PEGRAM and
 VICTOR BLAINE LYNCH
                                   MEMORANDUM OPINION[*] BY
v.  Record Nos. 1041-95-2     JUDGE JERE M. H. WILLIS, JR.
             1042-95-2            SEPTEMBER 24, 1996

COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF LOUISA COUNTY
                   Jay T. Swett, Judge

        C. David Whaley (Anthony G. Spencer;
        Morchower, Luxton & Whaley, on briefs), for
        appellants.

        Marla Graff Decker, Assistant Attorney
        General (James S. Gilmore, III, Attorney
        General, on brief), for appellee.


     Thomas Cole Pegram and Victor Blaine Lynch appeal from

convictions for possession of cocaine in violation of Code

§ 18.2-250.  They contend that the trial judge erred in refusing

to suppress evidence seized in violation of their Fourth

Amendment rights.  Lynch additionally claims that the trial judge

should have suppressed a statement he made after an officer

violated his Fifth Amendment right to an attorney.  We find no

error and affirm their convictions.

     The evidence proved that Trooper S. T. Elliott of the

Virginia State Police observed an El Camino vehicle travelling

westbound on Interstate 64 in Louisa County and followed it.

        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

Initially, he did not notice anything unusual about the vehicle and its two occupants. After following the vehicle for a mile to a mile and a half, he began to pass the vehicle and spied a "large cloth object" dangling from the rearview mirror. Trooper Elliott asked Trooper Michael John Alessi to assist him. When Trooper Elliott stopped the vehicle, he and Trooper Alessi approached the vehicle.

Trooper Elliott told Lynch, the driver, that he stopped his vehicle because of the object hanging from the mirror and issued Lynch a summons. Lynch then agreed, at Trooper Elliott's request, to answer a few questions and denied that his vehicle contained anything illegal. Trooper Elliott then "asked [Lynch] if he minded if I took a look" in the vehicle and Lynch "stated no, go right ahead." Lynch and Pegram, the passenger, complied with the request to exit the car. Both also agreed to be frisked. During his frisk of Pegram, Trooper Alessi obtained and inspected two hard plastic containers. One of these containers held a white substance later determined to be cocaine. Trooper Elliott arrested Pegram.

Trooper Alessi then searched the vehicle and found a pack of Kool cigarettes. Lynch denied that the cigarettes were his. When Trooper Alessi found cocaine in the cigarette pack, Trooper Elliott then arrested Lynch and read his Miranda warnings. After Lynch asserted his right to an attorney, Trooper Alessi told Lynch to contact him if he wanted to help himself by revealing

- 2 -

information about the sale of drugs or by working for the police. Lynch then admitted that the cigarette pack was his and that he purchased the cocaine in it.

The trial judge refused to suppress the cocaine and Lynch's statements. At the conclusion of the trial, the trial judge convicted Lynch and Pegram of possession of cocaine.

Pegram and Lynch challenge the constitutionality of the stop of their vehicle, the search, and the trial judge's refusal to suppress the cocaine. An officer must have probable cause or reasonable suspicion to detain a vehicle. Murphy v. Commonwealth, 9 Va. App. 139, 143, 384 S.E.2d 125, 127 (1989). Code § 46.2-1054 prohibits driving a vehicle "with any object . . . suspended from any part of the motor vehicle in such a manner as to obstruct the driver's clear view of the highway through the windshield." A police officer has the authority to detain a vehicle upon his belief that the vehicle is being operated in violation of the law. See Hoye v. Commonwealth, 18 Va. App. 132, 134, 442 S.E.2d 404, 406 (1994). Trooper Elliott stopped the vehicle based upon his belief that it was being operated in violation of Code § 46.2-1054.

The officer's inability to describe the cloth does not invalidate the stop. The appellants do not contest that an object was hanging from the mirror. Because Trooper Elliott had probable cause to believe that the cloth object violated Code § 46.2-1054, the trial judge did not err in finding that the

trooper had authority to stop the vehicle and to issue a summons.

Though Trooper Elliott admitted at trial that he "probably [had] some thought of . . . searching the vehicle" prior to pulling it over, we view the actions of a police officer in the field objectively. The cloth object provided a sufficient basis to detain the vehicle regardless of the officer's true motivations. Limonja v. Commonwealth, 8 Va. App. 532, 537-38, 383 S.E.2d 476, 480 (1989)(en banc), cert. denied, 495 U.S. 905 (1990). Therefore, we find that Trooper Elliott did not violate appellants' Fourth Amendment rights by detaining them and the vehicle.

The Commonwealth has the burden of proving a consensual search. However, Lynch consented to the search. After Trooper Elliott issued the summons, Lynch and Pegram were free to continue on their way. Lynch agreed to answer a few questions before leaving. He also allowed the officers to "take a look" in his vehicle.

"The scope of a person's consent is determined by whether it is objectively reasonable for the police to believe that the consent permitted them to search where they did." Grinton v. Commonwealth, 14 Va. App. 846, 851, 419 S.E.2d 860, 863 (1992). Trooper Elliott understood Lynch to have consented to a search of the car and at no time did Lynch limit the scope of the search or indicate to the officers that he wished them to discontinue their search. Trooper Elliott asked Lynch, prior to searching, "if he

had anything illegal in the car such as guns or drugs."  Thus, after Lynch granted consent, it was certainly reasonable for the officers to search any areas of the car or containers that might have hidden guns or drugs.  The "[f]ailure to object to the continuation of the search under these circumstances may be considered an indication that the search was within the scope of the consent."  United State v. Espinosa, 782 F.2d 888, 892 (10th Cir. 1986).  Thus, the Commonwealth proved Lynch's voluntary consent to search.

Lynch also contends that the admission of his statement concerning the cocaine violated his Fifth Amendment right.  He made statements after Trooper Elliott arrested him and gave him Miranda warnings.  Both officers testified that Lynch invoked his right to speak with an attorney.  However, Trooper Alessi testified that he:

> advised [Lynch] that I realized that he invoked his rights that he wanted an attorney and that if he wants to help himself out, we make no promises but if he--if he's aware of drug dealing in Goochland, Richmond area and he was willing to work or wanted to do something, to contact me, I think I--I normally will tell him to go see his attorney and discuss it with him and--and come back and contact me if he's willing to work.  It's just something that I normally do on a pretty routine basis.

In deciding whether an interrogation had occurred, the trial judge was required to make "a determination whether an objective observer would view an officer's words or actions as designed to elicit an incriminating response."  Blain v. Commonwealth, 7 Va.

App. 10, 15, 371 S.E.2d 838, 841 (1988). See Rhode Island v. Innis, 446 U.S. 291, 301 (1980).

Viewed in the light most favorable to the Commonwealth, Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991), the evidence established that Trooper Alessi suggested to Lynch that he should speak with an attorney regarding the possibility of providing the police with information in return for a lighter penalty. Considering Trooper Alessi's advice and Lynch's situation, we do not find that the statements were designed to provoke Lynch into making an incriminating response. Lynch volunteered his confession without pressure from the police. See Blain, 7 Va. App. at 15, 371 S.E.2d at 841. Accordingly, we find that the trial judge properly admitted Lynch's statement as evidence of his guilt.

For these reasons, we affirm the convictions.

Affirmed.

Benton, J., dissenting.

Based on the evidence in this record, I would hold that the Commonwealth did not meet its burden of proving that the troopers had probable cause to believe a violation was occurring when they stopped the vehicle.  Therefore, I would hold that the trial judge erred in failing to suppress the evidence.  In addition, I would hold that the officers obtained statements from Victor Lynch in violation of his Fifth Amendment right to counsel.

## I.

The evidence at the suppression hearing proved that Trooper S. T. Elliott stopped Lynch, the driver of a blue El Camino, and Thomas Pegram, Lynch's passenger, on Interstate 64 in Louisa County.  Trooper Elliott testified that he followed the El Camino for approximately one to one and one-half miles before deciding to make the stop.  He initially noticed nothing unusual about the vehicle or its occupants and admitted that Lynch was driving within the posted speed limit.  Trooper Elliott testified that when he began to pass the vehicle, he noticed "an object that was dangling from the rear-view mirror."  He called for assistance from Trooper Alessi and signaled Lynch to stop his vehicle.  Trooper Elliott advised Lynch that he stopped the vehicle because the hanging object violated Virginia law.  See Code § 46.2-1054.

During the hearing, defense counsel questioned Trooper Elliott regarding the object that was the basis for the stop.  The trooper could not articulate any details about the object

- 7 -

that prompted the detention.  He testified as follows:

> Q.  Now, your purpose for pulling them over was what?
>
> A.  An object that was dangling from the rear-view mirror.
>
> Q.  Okay.  And do you remember what that object was?
>
> A.  No, sir, only that it was a cloth object, large cloth object.
>
>     \*     \*     \*     \*     \*     \*     \*
>
> Q.  Now, the purpose for the stop was that there was a dangling object from the mirror.
>
> A.  Yes, sir.
>
>     \*     \*     \*     \*     \*     \*     \*
>
> Q.  And you have no recollection other than it was a cloth that was dangling--something that was cloth that was dangling from the mirror, is that correct?
>
> A.  Yes, sir.
>
> Q.  You don't remember anything else about it?
>
> A.  No, sir.
>
> Q.  You don't remember the size, color, nothing, do you?
>
> A.  No, sir.
>
> Q.  And you never entered the vehicle to determine whether that piece of cloth obstructed the vision of the driver, did you?
>
> A.  No, sir.

On cross-examination, Trooper Elliott responded affirmatively when asked if he testified that the object "was hanging about six or eight inches down."  His testimony also

- 8 -

proved that he was traveling approximately 65 miles per hour in a lane adjacent to Lynch when he decided that the object was unlawful.  The general district court judge who tried the traffic case found no violation of Code § 46.2-1054 and dismissed the charge.

## II.

"If the stop of [a] vehicle is without a warrant, the Commonwealth has the burden to prove the stop was legal."  Murphy v. Commonwealth, 9 Va. App. 139, 143, 384 S.E.2d 125, 127 (1989).  An arrest or issuance of a summons for violating a law is lawful only when based upon probable cause to believe that the driver was violating the law.  See Yeatts v. Minton, 211 Va. 402, 405, 177 S.E.2d 646, 648 (1970).  At trial the Commonwealth conceded that the officer needed probable cause to stop the vehicle and issue the summons.

Trooper Elliott testified that he stopped Lynch's vehicle and issued a summons for a violation of Code § 46.2-1054.  In pertinent part, that statute reads as follows:

> It shall be unlawful for any person to drive a motor vehicle on a highway in the Commonwealth with any object or objects, other than a rear view mirror, sun visor, or other equipment of the motor vehicle approved by the Superintendent, suspended from any part of the motor vehicle in such a manner as to obstruct the driver's clear view of the highway through the windshield, the front side windows, or the rear window, or to alter a passenger-carrying vehicle in such a manner as to obstruct the driver's view through the windshield.

Code § 46.2-1054 (emphasis added).

- 9 -

The mere existence of an item dangling from the rearview mirror does not constitute a violation of Code § 46.2-1054. Thus, the presence of the item did not provide, ipse dixit, "prima facie evidence that [Lynch] was violating the law." Upton v. Commonwealth, 211 Va. 445, 447, 177 S.E.2d 528, 530 (1970). The trooper did not testify as to any facts that would support the conclusion that he had probable cause to stop the vehicle.

The evidence proved that the trooper had no reason to stop the vehicle before he saw the item. He had observed Lynch operating the vehicle and saw no indication that Lynch's vision might have been impaired. Lynch was not speeding and was not driving in an erratic manner.

Furthermore, Trooper Elliott could not describe the object that he said he observed hanging from the mirror. He could not provide details about its size, color, shape, or dimensions. Because the trooper failed to give content to his subjective conclusion that the item was "large," the trial judge had no basis upon which to uphold the stop. Moreover, the trooper was unable to state that after he stopped the vehicle he verified that the item was positioned so as to obstruct the driver's clear view of the highway. Trooper Elliott's observation, made as he passed the vehicle while traveling in excess of 65 miles an hour gave rise, at most, to a hunch that the object he saw would obstruct the driver's view.

As this Court recently stated, "[t]he only difference

between facts needed to establish probable cause and those needed to prove guilt beyond a reasonable doubt is in the degree or quantum of proof, not in the facts or elements of the offense." Ford v. City of Newport News, ___ Va. App. ___, ___, ___ S.E.2d ___, ___ (1996) (citations omitted). "In assessing an officer's probable cause for making a warrantless arrest, no less strict standards may be applied than are applicable to a magistrate's determination that an arrest warrant should issue." De Priest v. Commonwealth, 4 Va. App. 577, 584, 359 S.E.2d 540, 543 (1987) (quoting Washington v. Commonwealth, 219 Va. 857, 862, 252 S.E.2d 326, 329 (1979)), cert. denied, 488 U.S. 985 (1988). Based upon the evidence in the record, the trial judge could not have reasonably concluded that Trooper Elliott's observations provided him with probable cause to believe Lynch was driving the vehicle in violation of Code § 46.2-1054. Thus, I would hold that because Trooper Elliott violated Lynch's Fourth Amendment rights when he stopped the vehicle, the trial judge erred in refusing to suppress the evidence.

### III.

The evidence also establishes that the stop was a pretext for conducting a search for contraband. See United States v. Smith, 799 F.2d 704, 710 (11th Cir. 1986). The evidence proved that Trooper Elliott had a custom of randomly seeking the opportunity to search vehicles that he stopped for drugs, weapons, or other items. On the day Trooper Elliott stopped

- 11 -

Lynch, Trooper Elliott and Trooper Alessi were working as a team. Acting together, Trooper Elliott and Trooper Alessi had just stopped another vehicle for a traffic violation before they stopped Lynch. Trooper Alessi said "it's possible" that they searched that vehicle prior to stopping Lynch. Trooper Alessi had a drug detection dog in his vehicle.

Trooper Elliott admitted that he requested assistance from Trooper Alessi because he had "some thought of maybe searching the vehicle." Other than the desire to search Lynch's vehicle, the evidence fails to explain why Trooper Elliott sought Trooper Alessi's assistance in giving a summons for a minor infraction at 4:30 p.m. on a June afternoon. The attempt to justify the stop by pointing to the alleged traffic violation is belied by the presence of the other trooper and "was merely a pretext to legitimate the impermissible stop." United States v. Miller, 821 F.2d 546, 549 (11th Cir. 1987). In the absence of any probable cause to conduct the stop, the only motivation to make the stop was the quest to search.

IV.

I also disagree with the Commonwealth's argument that, in any event, the evidence proved a valid consent to search. "When trying to establish that there was a voluntary consent after an illegal stop, the [Commonwealth] has a much heavier burden to carry than when the consent is given after a permissible stop." United States v. Ballard, 573 F.2d 913, 916 (5th Cir. 1978). The

- 12 -

Commonwealth's evidence proved that after issuing the summons, Trooper Elliott informed Lynch both that he was free to leave and that he wanted to question him. While Trooper Elliott stood by the driver's door interrogating Lynch, Trooper Alessi stood opposite him at the passenger door.

Trooper Elliott did not ask Lynch for "permission" to search the car and did not ask for Lynch's "consent." Although the officers had consent forms approved by their department, they did not use them. Rather, Trooper Elliott testified that he "asked [Lynch] if he minded if [Trooper Elliott] took a look." The officers also did not inform Lynch that he was not required to allow a search. See Walls v. Commonwealth, 2 Va. App. 639, 654, 347 S.E.2d 175, 183-84 (1986).

The evidence further proved that Trooper Alessi asked Pegram to exit the vehicle and "asked him if he would mind if [Trooper Alessi] did a pat down of him." He testified that Pegram "acknowledged that I could." "After feeling . . . objects [in Pegram's pocket, Trooper Alessi] asked what it was." He testified that Pegram "never really responded" even after he asked Pegram the question several times. After Pegram failed to respond, Trooper Alessi "asked him if he'd mind showing me the objects in his pocket." When Pegram removed the objects, Trooper Alessi opened two small closed containers and discovered cocaine.

In each instance the troopers relied upon their statements "would mind" to indicate that they requested consent. However,

the word "mind" has many shades of meaning, including to "give heed to attentively in order to obey." Webster's Third New International Dictionary, p. 1436-37 (1981). That word does not unambiguously convey the same meaning as the word "consent." When consent is based on an implication, as it was here, the Commonwealth has a heavy burden of proof. United States v. Impink, 728 F.2d 1228, 1232 (9th Cir. 1984); Elliotte v. Commonwealth, 7 Va. App. 234, 238, 372 S.E.2d 416, 419 (1988). The words used, the failure to inform the men that they could refuse the search, and the failure to use the approved "consent form," negate the suggestion of voluntary consent.

V.

In discharging its burden, the Commonwealth also must establish that the claimed voluntary act, the alleged consent, was "sufficiently an act of free will to purge the primary taint" of the illegal seizure. Wong Sun v. United States, 371 U.S. 471, 486 (1963). The search that resulted in the discovery of the evidence occurred promptly after Trooper Elliott had unlawfully detained Lynch and issued him a traffic summons. When "'[t]he evidence obtained pursuant to [a] . . . voluntary consent to search [is obtained] . . . by exploitation of [the initial] illegality rather than by means sufficiently distinguishable to be purged of the primary taint,'" the evidence must be suppressed. Hall v. Commonwealth, 22 Va. App. 226, 229, 468 S.E.2d 693, 695 (1996)(citation omitted). The search of the

- 14 -

vehicle was contemplated before the stop, when Trooper Elliott called Trooper Alessi, and occurred only after the troopers had unlawfully detained Lynch and issued the summons.  Furthermore, Trooper Elliott testified that he only questioned Lynch because he "intended [to ask] . . . for a consent to search the vehicle." Thus, the cocaine discovered during this search was obtained as a result of illegal means and was not sufficiently attenuated from the illegal seizure to "purge the taint" of the seizure. Walls, 2 Va. App. at 654-55, 347 S.E.2d at 184.

The record in this case fails to establish, and indeed could not establish, that the consent was free from the taint of the illegal seizure.  The temporal proximity of the illegal seizure and the presumed "consent," the lack of intervening circumstances, and the purpose and flagrancy of the troopers all lead to the conclusion that the causal connection between the illegal seizure and the "consent" remained unbroken.  See Commonwealth v. Ealy, 12 Va. App. 744, 755, 407 S.E.2d 681, 688 (1991).  No evidence indicates that these persons, who were stopped and given a traffic summons, and who were flanked by the officers, were told or knew that they had a right to refuse the search of the vehicle.

VI.

The evidence also proved that after Lynch was arrested, Trooper Elliott read Lynch Miranda warnings.  "[W]hen [Trooper Elliott] asked if [Lynch] understood them, he stated, yes, sir,

- 15 -

and when [Trooper Elliott] asked if he would like to waive them and talk to us, he stated, I don't guess so."  Trooper Elliott also testified that Trooper Alessi then "advised . . . Lynch that he knew that he had invoked his rights to an attorney . . . but that [Trooper Alessi] wanted to advise him [that] . . . if he wanted to try and help hi[m]self by maybe telling us about anyone who sold drugs in Goochland or even Richmond . . . , we would be willing to try and work with him."  During his own testimony, Trooper Alessi acknowledged that after Lynch requested an attorney, he advised Lynch to contact him if he wanted to "help himself out" by providing information of drug dealing.  After Alessi's "advice," Lynch admitted possessing the cocaine and informed the officers where he had purchased it.

"[W]hen an accused who is in custody makes a request for assistance of counsel, 'the interrogation must cease until an attorney is present.'"  Hines v. Commonwealth, 19 Va. App. 218, 220, 450 S.E.2d 403, 404 (1994)(emphasis omitted)(quoting Miranda v. Arizona, 384 U.S. 436, 474 (1966)).  Any further interrogation initiated by the police is prohibited.  Edwards v. Arizona, 451 U.S. 477, 484-85 (1981).  Interrogation includes express questioning and its "functional equivalent."  Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980).  Clearly, interrogation is not limited to questions and may include other communications. The functional equivalent of questioning includes "any words or actions on the part of the police . . . that the police should

know are reasonably likely to elicit an incriminating response from the suspect." Id. at 301. A prohibited interrogation has occurred if "an objective observer would view an officer's words or actions as designed to elicit an incriminating response." Blain v. Commonwealth, 7 Va. App. 10, 15, 371 S.E.2d 838, 841 (1988).

Considering that the officers had just arrested Lynch for cocaine possession and unsuccessfully had sought to question him, an objective observer would view Trooper Alessi's "advice" to cooperate with the police as a means of eliciting an incriminating response from Lynch. See United States v. Montana, 958 F.2d 516, 518-19 (2d Cir. 1992); United States v. Johnson, 812 F.2d 1329, 1331 (11th Cir. 1986). Once Lynch had denied owning the drugs and invoked his right to an attorney, the effect of advising him of an opportunity to cooperate was to convey disbelief in his response and to invite waiver of his request for an attorney. Obviously, either Trooper Alessi or a prosecutor could have spoken with Lynch's attorney to seek Lynch's cooperation. By offering to be lenient if Lynch provided information regarding drug dealing in Goochland and Richmond, Trooper Alessi obviously sought a response. The trooper's offer to be helpful to Lynch if Lynch was cooperative was an undisguised attempt to initiate discussion and further conversation. By seeking to provoke Lynch into further communication and discussion immediately after Lynch invoked his

right to an attorney, Trooper Alessi engaged in the "functional equivalent" of interrogation. Therefore, Lynch's statements concerning his possession and purchase of the cocaine should have been suppressed. <u>See</u> <u>Hines</u>, 19 Va. App. at 221-22, 450 S.E.2d at 404-405.

For these reasons, I would hold that the trial judge erred in refusing to suppress the cocaine and Lynch's statements.