# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-CT-02063-SCT

*FREDRICK MOORE*

*v.*

*STATE OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 10/11/2005 |
| TRIAL JUDGE: | HON. ROBERT WALTER BAILEY |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PRO SE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: CHARLES W. MARIS, JR. |
| DISTRICT ATTORNEY: | BILBO MITCHELL |
| NATURE OF THE CASE: | CIVIL - POST CONVICTION RELIEF |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED AND THE JUDGMENT OF THE LAUDERDALE COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED - 06/19/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     After Fredrick Moore pleaded guilty to the charge of possession of a firearm by a felon, the Lauderdale County Circuit Court, Judge Robert W. Bailey presiding, imposed a sentence to be served consecutively to a sentence previously imposed pursuant to a probation-revocation hearing.   Moore filed a post-conviction-relief motion, which

subsequently was denied by Judge Bailey.  On appeal, this case was assigned to the Court of Appeals, which reversed the trial court's denial of Moore's post-conviction-relief motion and remanded the case to the trial court for an evidentiary hearing on the issue of Moore's ineffective-assistance-of-counsel claim.  *Moore v. State*, 2007 Miss. App. LEXIS 242 (Miss. Ct. App. Apr. 17, 2007).  After the Court of Appeals denied the state's motion for rehearing (*Moore v. State*, 2007 Miss. App. LEXIS 744 (Miss. Ct. App. Nov. 6, 2007)), the State filed a petition for writ of certiorari, which this Court granted.  *Moore v. State*, 2008 Miss. LEXIS 130 (Miss. Mar. 6, 2008).  Upon consideration, we reverse the judgment of the Court of Appeals and reinstate and affirm the Lauderdale County Circuit Court's judgment denying Moore's post-conviction-relief motion.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2.    On June 4, 2004, Meridian police officer Joseph Moulds observed a person, later identified as Fredrick Moore, driving an automobile with only one working tail light on the city streets of Meridian.[1]  Also in the automobile was a female passenger.  Acting on his belief that this vehicle was in violation of state law by having only one operative tail light, Officer Moulds initiated a traffic stop.[2]  Prior to approaching the vehicle on foot, Officer

---

[1]Officer Moulds's affidavit states that the traffic stop occurred on June 6, 2004, while both the Meridian police report completed by Detective J. C. Boswell and the indictment state that the incident occurred on June 4, 2004; thus, we will use the earlier date.

[2]Officer Moulds was mistaken.  Mississippi Code Annotated Section 63-7-13 (Rev. 2004) requires that a vehicle have only one working tail light.  Thus, Moore's vehicle was in compliance with the statute.

2

Moulds observed the driver making movements as if he were placing something on the floorboard or under the driver's seat. A second Meridian police officer, identified in the record only as "Officer Stewart," arrived on the scene and "dealt with the passenger." Officer Moulds approached the vehicle on the driver's side, informed the driver of the reason for the stop, and asked the driver for his driver's license and registration. By this time, Officer Moulds had detected the odor of marihuana. The license check revealed that the license number was nonexistent and that the driver had given Officer Moulds a false name. Officer Moulds then placed the driver (again, later identified as Moore) in handcuffs and put him in the police car while he searched the vehicle. The search of the vehicle produced a blunt marihuana cigarette which was still hot, as well as a Hi-Point .380-caliber hand gun located under the driver's seat. Moore initially stated that he knew nothing about the hand gun being in the car, but later admitted that the hand gun belonged to his brother.

¶3.    On August 6, 2004, Moore was indicted by the Lauderdale County Grand Jury for possession of a firearm by a felon pursuant to Mississippi Code Annotated Section 97-37-5 (Rev. 2006). Moore's prior felony conviction was for the crime of sale of cocaine, resulting in a twenty-year penitentiary sentence, with fifteen years of that sentence suspended pending Moore's future good behavior. This subsequent firearm-possession charge resulted in the fifteen-year suspended sentence being revoked in a separate proceeding, meaning that Moore was ordered to actually serve the balance of the initially-imposed twenty-year sentence.

¶4.    On October 15, 2004, Moore, who was represented by counsel, filed a Petition to Enter a Guilty Plea in the Lauderdale County Circuit Court. On that same day, Judge Bailey

3

conducted a guilty-plea colloquy and accepted Moore's *Alford* plea. *North Carolina v. Alford*, 400 U.S. 25; 91 S. Ct. 160; 27 L.Ed. 162 (1970). In essence, although Moore maintained his innocence, he admitted to Judge Bailey that, based on the existing evidence against him, he knew that if he proceeded to a jury trial, there was a strong probability that the jury would find him guilty; therefore, Moore informed Judge Bailey that he felt it was in his best interest to enter into a plea agreement with a sentence recommendation, which, if accepted by the court, would most likely result in a more lenient sentence than one imposed after a jury trial. At Judge Bailey's request, the prosecutor made an offer of proof for the record, revealing what the State believed the evidence would be if the case proceeded to trial. At the conclusion of the guilty-plea hearing, Judge Bailey determined that Moore's guilty plea pursuant to *Alford* was freely and voluntarily offered with a full understanding of the consequences of the guilty plea, and "that there is a factual basis to support his guilty plea and that he has received effective assistance of counsel."

¶5.     On the same day, Judge Bailey sentenced Moore, *inter alia*, to a term of two years in the custody of the Mississippi Department of Corrections, with one year and 364 days suspended and one day to serve, and one year of post-release supervision pursuant to the provisions of Mississippi Code Annotated Section 47-7-34 (Rev. 2004). Judge Bailey ordered this sentence to run consecutively to the previously-imposed fifteen-year sentence which Moore was serving. In response to Judge Bailey's question, Moore answered that he understood all jail time credit would be applied to his fifteen-year sentence and not to the firearm-possession sentence.

¶6.     On March 18, 2005, Moore filed his *pro se* Petition for Post-Conviction Collateral Relief (PCR).  On October 11, 2005, Judge Bailey entered an eleven-page order denying Moore's PCR petition.  Moore timely filed his Notice of Appeal, *pro se*, and Judge Bailey entered an order allowing Moore to proceed on appeal as a pauper.  We assigned this case to the Court of Appeals.

## PROCEEDINGS IN THE COURT OF APPEALS

¶7.     Before the Court of Appeals, Moore raised five issues, which we restate as follows: (1) Whether Moore was denied effective assistance of counsel due to his counsel's alleged failure:  (a) to stay abreast of the proceedings and the applicable law, (b) to explain the meaning of the *Alford* plea, and (c) to investigate the facts; (2) whether there was a factual basis to support the guilty plea; (3) whether Moore was entitled to an evidentiary hearing on his post-conviction-relief petition; (4) whether the trial court erred in ordering that Moore forfeit sixty days of accrued earned time for filing a frivolous motion; and (5) whether the cumulative effect of trial court errors entitled Moore to relief.

¶8.     The Court of Appeals determined that, while Moore had failed to make a prima facie showing that his trial attorney was ineffective in explaining the import of the *Alford* plea and investigating the facts of the case, Moore had made a prima facie showing that his counsel was ineffective in failing to stay abreast of the proceedings and the applicable law, thus entitling Moore to an evidentiary hearing in the trial court on this issue. *Moore*, 2007 Miss. App. LEXIS 242, ** 4-12, ¶¶ 7-21.

5

¶9. On this issue, the Court of Appeals focused on the legality of the traffic stop which ultimately led to the seizure of the subject firearm from Moore's vehicle. The Court of Appeals stated, *inter alia*:

> The officer stopped Moore because his vehicle had one of two taillights that was not working. By statute, every vehicle shall be equipped with at least one working rear lamp. Miss. Code Ann. § 63-7-13 (Supp. 2006). As Moore's vehicle was in compliance, and it is "clear that what the police observed did not constitute a violation of the cited traffic law," there was no probable cause to stop his car. The subsequent search was illegal, and the gun should have been suppressed. This is basic Fourth Amendment law. Moore has made a showing that his attorney was deficient for recommending the plea instead of filing a motion to suppress.
>
> Moore alleges that but for his attorney advising him of this right, the result would probably be different. He says he was denied the right to intelligently choose whether to plead or go to trial. Because Moore has made a prima facie showing that he was denied effective assistance of counsel, we remand for an evidentiary hearing on this issue.

*Moore*, 2007 Miss. App. LEXIS 242, **4-6, ¶¶7-11.

¶10. Since the Court of Appeals reversed and remanded on this issue, it understandably chose not to address the remaining two issues concerning whether the trial court erred in ordering that Moore forfeit sixty days of accrued earned time for filing a frivolous motion, and whether the cumulative effect of trial court errors entitled Moore to relief. *Id.* at *12, ¶¶ 22-23.

¶11. After the State of Mississippi's motion for rehearing was denied by the Court of Appeals, the State filed a petition for writ of certiorari, which this Court granted.

6

**DISCUSSION**

¶12. In its petition for writ of certiorari, the State asserts Moore's post-conviction-relief claim was procedurally barred, and even considering this issue on its merits, that the Court of Appeals' decision is in direct conflict with this Court's decision in *Harrison v. State*, 800 So. 2d 1134 (Miss. 2001). We agree with the Court of Appeals that this issue is not procedurally barred. *Moore*, 2007 Miss. App. LEXIS 242, **4, ¶8. We likewise agree with the Court of Appeals that Moore failed to make a prima facie showing that his trial attorney was ineffective in explaining the import of the *Alford* plea and investigating the facts of the case. *Id.* at ** 6-10, ¶¶ 12-16. We further agree with the Court of Appeals that the record unquestionably reveals there was a factual basis to support Moore's guilty plea. Thus, at this point, we will focus on the issue which the Court of Appeals found had merit, namely, whether Moore had made a prima facie showing that his counsel was ineffective in failing to stay abreast of the proceedings and the applicable law, thus entitling Moore to an evidentiary hearing in the trial court on this issue. We restate the issue here for the sake of discussion.

I. **WHETHER MOORE MADE A PRIMA FACIE SHOWING OF INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO ATTEMPT TO SUPPRESS EVIDENCE RETRIEVED FROM HIS VEHICLE AFTER AN ALLEGEDLY ILLEGAL TRAFFIC STOP.**

¶13. When considering a trial court's denial of a petition filed pursuant to the Mississippi Uniform Post-Conviction Collateral Relief Act, Mississippi Code Annotated Sections 99-39-1, et seq. (Rev. 2007), our standard of review is well-settled:

7

"When reviewing a lower court's decision to deny a petition for post conviction relief this Court will not disturb the trial court's factual findings unless they are found to be clearly erroneous. However, where questions of law are raised the applicable standard of review is de novo." *Lambert v. State*, 941 So. 2d 804, 807 (Miss. 2006) (quoting *Brown v. State*, 731 So. 2d 595, 598 (Miss. 1999)); *see also Bank of Miss. v. S. Mem'l Park, Inc.*, 677 So. 2d 186, 191 (Miss. 1996).

*Callins v. State*, 975 So. 2d 219, 222 (Miss. 2008).

¶14.    In finding that Moore was entitled to an evidentiary hearing to determine whether his trial attorney was guilty of rendering ineffective assistance of counsel by failing to attempt to suppress the fruits of the search of Moore's vehicle, the Court of Appeals relied on *Walker v. State*, 913 So. 2d 198 (Miss. 2005), a case decided by this Court subsequent to our decision in *Harrison*. However, *Walker*, a death-penalty case, is distinguishable from this case. In *Walker*, the defendant filed a motion to suppress the evidence found when an Arkansas state trooper pulled him over for speeding and the subsequent inventory search of the vehicle led to evidence which implicated the defendant in a murder in Mississippi. *Id.* at 214-15, 225. The defendant argued that the officer lacked probable cause to stop the vehicle and conduct the search, but the defendant never denied that he was speeding. *Id.* at 225-26. Instead, the defendant argued that, because the state trooper did not issue him a speeding ticket "in any form or fashion," the state trooper's reason for stopping him "'could easily' have been pretextual," thus causing the items in the vehicle to have been seized in violation of his Fourth Amendment right to be free from an illegal search and seizure. *Id.* at 225. Although we found a procedural bar on this issue, we alternatively addressed this issue on its merits and found that the issue was meritless inasmuch as the stop was not

8

pretextual, but instead the evidence revealed "that the stop was objectively valid." ***Id.*** at 225-26. En route to making this finding, we cited ***United States v. Escalante***, 239 F.3d 678, 680-81 (5th Cir. 2001), and quoted language from ***Escalante*** which was used by the Court of Appeals to undergird its finding that this issue had merit:

> The traffic stop may have been pretextual. But under ***Whren v. United States***, [517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)], a traffic stop, even if pretextual, does not violate the Fourth Amendment if the officer making the stop has "probable cause to believe that a traffic violation has occurred." *This is an objective test based on the facts known to the officer at the time of the stop, not on the motivations of the officer in making the stop.* On the other hand, if it is clear that what the police observed did not constitute a violation of the cited traffic law, there is no "objective basis" for the stop, and the stop is illegal. (Footnotes omitted) (emphasis added).

***Walker,*** 913 So. 2d at 225-26 (quoting ***Escalante***, 239 F.3d at 680-81). *See* ***Moore***, 2007 Miss. App. LEXIS 242, **4-6, ¶¶9-10.

¶15. However, in both ***Walker*** and ***Escalante***, the issue was whether the stop was pretextual. While Moore argued to the Court of Appeals that he was racially profiled, we see the issue as one of mistake of law. However, pursuant to ***Walker*** and ***Escalante***, even assuming *arguendo* that there was factual support in the record (which there is not) that Moore was racially profiled, if Officer Moulds had probable cause to believe that Moore was violating a law, the stop was constitutional, regardless of Officer Moulds's alleged motivation for stopping the vehicle.

¶16. With this having been said, of significant import is that the State argues the Court of Appeals overlooked our decision in ***Harrison***, which the State asserts is directly on point

9

with the case *sub judice*. Since we agree with the State, we will thoroughly analyze *Harrison*.

¶17. In *Harrison*, two Lincoln County deputy sheriffs stopped Harrison at 1:30 a.m. for traveling sixty-seven to seventy miles per hour in a construction zone which was marked with a sixty-mile-per-hour speed limit sign. *Harrison*, 800 So. 2d at 1135. No workers were in the construction zone at that early hour. *Id.* Upon stopping Harrison, one of the deputies requested Harrison's driver's license and asked some general questions of Harrison, thus learning that Harrison was driving a vehicle which he had rented after flying to Houston, Texas, and that he was en route to Alabama. *Id.* The driver's license check revealed that, although Harrison's driver's license was valid, Harrison had a criminal history for narcotics trafficking. *Id.* After Harrison assented to a search of his vehicle, one of the deputies opened the rear door of the vehicle and smelled the odor of marihuana. *Id.* After obtaining Harrison's car keys and opening the trunk, one of the deputies discovered 117 pounds of marihuana in a duffle bag. *Id.*

¶18. Harrison was subsequently indicted, tried and convicted for the crime of possession with the intent to distribute more than one kilogram of marihuana, in violation of Mississippi Code Annotated Section 41-29-139 (1972), as amended. *Id.* at 1135-36. Harrison appealed, and we assigned this case to the Court of Appeals, which affirmed the trial court in a five-five decision. *Id.* at 1136. The Court of Appeals' dissent opined that the deputies did not have probable cause to pull Harrison over for speeding because he had not violated the posted speed limit inasmuch as there were no construction workers present in the

10

construction zone at 1:30 a.m.[3]  *Id.*   After Harrison's motion for rehearing was denied by the

Court of Appeals, this Court granted Harrison's petition for writ of certiorari.  *Id.*

¶19.     After a thorough discussion of the applicable statutes and the facts of the case, this

Court found that Harrison had not violated the construction-zone speed limit (since

construction workers were not present) or the general seventy-mile-per-hour speed limit, and

that it thus necessarily followed "that evidence derived from the stop would be subject to

suppression if the inquiry stopped there."  *Id.* at 1136-38.   However, this Court considered

cases from both the United States Supreme Court and this Court in concluding that the

deputies had sufficient probable cause to stop Harrison, even though their stopping Harrison

was a mistake of law.  *Id.* at 1138-39.  We stated:

> The United States Supreme Court has stated that the "decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." ***Whren v. United States***, 517 U.S. 806, 810, 116 S. Ct. 1769, 1772, 135 L. Ed. 2d 89 (1996), *citing **Delaware v. Prouse***, 440 U.S. 648, 659, 99 S. Ct. 1391, 1399, 59 L. Ed. 2d 660 (1979). We have held that the test for probable cause in Mississippi is the totality of the circumstances. ***Haddox v. State***, 636 So. 2d 1229, 1235 (Miss. 1994). This Court has further defined probable cause as:

---

[3]Mississippi Code Annotated Section 63-3-516 (Rev. 2004) requires, *inter alia*, that construction workers be present for the lower speed limit to be applicable.  Of course, no construction workers were present at 1:30 a.m.  Thus, if this statute was not applicable to Harrison, there was no speeding violation, since Harrison was admittedly driving no faster than seventy miles per hour, which was the general posted speed limit for I-55.

11

a practical, nontechnical concept, based upon the conventional consideration of every day life on which reasonable prudent men, not legal technicians act. It arises when the facts and circumstances with an officer's knowledge, or of which he has reasonably trustworthy information, are sufficient in themselves to justify a man of average caution in the belief that a crime has been committed and that a particular individual committed it.

*Conway v. State*, 397 So. 2d 1095, 1098 (Miss. 1980) (quoting *Strode v. State*, 231 So. 2d 779 (Miss. 1970)).

Here, the officers testified that they based their stop on the belief that Harrison was in violation of the traffic laws that made it illegal to exceed the posted speed limit, which was sixty (60) miles per hour. In essence, the stop was based on a mistake of law. In addressing the validity of probable cause in light of a mistake of law, several courts have determined that if the probable cause is based on good faith and a reasonable basis then it is valid. *See United States v. Wallace*, 213 F.3d 1216 (9th Cir. 2000)(finding probable cause existed because of reasonable belief that suspect committed or was committing crime even though officer was mistaken that all front-window tint was illegal); *United States v. Sanders*, 196 F.3d 910 (8th Cir. 1999)(officer objectively had reasonable basis for probable cause even though, vehicle was not technically in violation of the statute); *DeChene v. Smallwood*, 226 Va. 475, 311 S.E.2d 749 (Va. 1984)(holding arrest resulting from mistake of law should be judged by the same test as one stemming from mistake of fact; whether the arresting officer acted "in good faith and with probable cause).

*Id.*

¶20. After likewise discussing the Eight Circuit's decision in *Sanders*, which cited *Arizona v. Evans,* 514 U.S. 1, 17, 115 S. Ct. 1185, 131 L. Ed. 2d 34 (1995), this Court concluded:

Based on the totality of the circumstances and the valid reasonable belief that Harrison was violating the traffic laws, the two deputies had probable cause to stop Harrison, even though it was based on a mistake of law. Accordingly, we find that the deputies had sufficient probable cause to stop Harrison, even in light of the mistake of law.

*Id.* at 1139. Harrison's conviction and sentence for the crime of possession with intent to distribute more than one kilogram of marihuana were thus affirmed. *Id.*[4]

¶21.    With our holding in ***Harrison*** squarely before us, we now return to the facts of today's case, which we find likewise involves a mistake-of-law issue. From the totality of the record before us, we conclude that Officer Moulds had an objective, reasonable basis for believing that Moore was in violation of the law for driving a vehicle on a public street with only one operative tail light.[5] In other words, based on the totality of the circumstances with which Officer Moulds was confronted, including a valid, reasonable belief that Moore was violating a traffic law, Officer Moulds had sufficient probable cause to pull Moore over, although, as it turns out, Officer Moulds based his belief of a traffic violation on a mistake of law. It necessarily follows from the record before us that, consistent with our discussion of cases from this Court, the United States Supreme Court, and certain federal circuit courts, the

---

[4]Thus, there was no trial- court error in allowing the seized contraband into evidence.

[5]Since there was no jury trial and thus no testimony from Officer Moulds, the record reveals certain information on this point. (1) Officer Moulds's narrative report of the incident includes the statements, "I saw a car pass me with the taillight not operating. I followed the vehicle and pulled it over." (2) During the plea colloquy with Moore, Judge Bailey inquired of the prosecutor what the evidence would reveal on behalf of the State if the case proceeded to trial, and the prosecutor stated, *inter alia*, "Moulds, who testified at the revocation hearing, and testified in this way. He said that on June 4th, 2004, he was on patrol monitoring traffic near 20th Street and 35th Avenue in Meridian, Lauderdale County. He saw a car pass him with a tail light out. He followed the vehicle and made a stop. He came up to the driver's side of the vehicle and smelled marihuana." (3) In his eleven-page order denying Moore's PCR petition, Judge Bailey stated, *inter alia*, that during the State's offer of proof at Moore's guilty plea hearing, the State "referr[ed] to the testimony of the arresting officer, who arrested [Moore] after a traffic stop in which [Moore] provided a false identity, had a blown out tail light, and was in possession of a firearm as a convicted felon."

13

search of Moore's vehicle which produced, *inter alia*, the Hi-Point .380 caliber handgun, was lawful. Had Moore's case gone to trial, the trial court would not have committed error by allowing the handgun into evidence. Thus, Moore's trial counsel cannot be found to have rendered ineffective assistance by failing to file a motion to suppress this evidence prior to Moore's offer of his *Alford* plea.

¶22. For the reasons stated, we find that the Court of Appeals erred in finding that Moore had made a prima facie showing that he was denied ineffective assistance of counsel so as to allow him to have an evidentiary hearing on this issue before the trial court.

¶23. Since the Court of Appeals did not address two of the five issues due to its decision to reverse and remand on the ineffective-assistance-of-counsel issue, and since we now find that this issue has no merit, we must consider the two additional issues not addressed by the Court of Appeals.

## II. WHETHER THE TRIAL COURT ERRED IN FORFEITING SIXTY DAYS OF MOORE'S ACCRUED EARNED TIME DUE TO FILING A FRIVOLOUS MOTION.

¶24. In its order denying Moore's post-conviction-relief petition, the trial court found, *inter alia*, that the allegations contained in the petition were "conclusory in nature and are without any factual basis. The Transcript of the guilty plea hearing clearly shows that the Petitioner entered a voluntary, intelligent plea. Therefore, the Court finds that the Petition is without merit and should be dismissed as frivolous." Upon making this finding and dismissing the post-conviction-relief petition, the trial court likewise ordered the Mississippi Department

14

of Corrections to forfeit sixty days of Moore's accrued earned time pursuant to Mississippi Code Annotated Section 47-5-138 (Rev. 2004).

¶25. Section 47-5-138(3) states in pertinent part:

(a) For the purposes of this subsection, "final order" means an order of a state or federal court that dismisses a lawsuit brought by an inmate while the inmate was in the custody of the Department of Corrections as frivolous, malicious or for failure to state a claim upon which relief may be granted.

(b) On receipt of a final order, the department shall forfeit:

(i) Sixty (60) days of an inmate's accrued earned time if the department has received one (1) final order as defined herein.

¶26. Mississippi Code Annotated Section 99-39-11(2) (Rev. 2007) provides that in considering whether an inmate's post-conviction-relief petition should be dismissed, the trial court must consider "the face of the motion, any annexed exhibits and the prior proceedings in the case." The trial judge unquestionably could consider both the civil file in Moore's post-conviction-relief proceedings and the entire record in the criminal proceedings, including the transcript of the guilty-plea hearing, in determining not only the issue of the merits of Moore's post-conviction-relief petition, but also the issue of whether the petition was frivolous for the purpose of considering sanctions. From the record before us, we find that the trial judge did not abuse his discretion in sanctioning Moore via a forfeiture of sixty days of accrued earned time. *Stanley v. State*, 904 So. 2d 1127, 1133 (Miss. Ct. App. 2004). "The purpose of such forfeitures is to reduce frivolous filings on the part of incarcerated individuals, whether literate or illiterate, *pro se* or represented by counsel." *Id.* (citing *Holt v. State*, 757 So. 2d 1088, 1090 (Miss. Ct. App. 2000)).

15

¶27.    We thus find this issue to be without merit.

### III.    WHETHER THE CUMULATIVE EFFECT OF TRIAL COURT ERRORS ENTITLES MOORE TO RELIEF.

¶28.    In considering the record before us, we have determined that the trial court committed no reversible error in today's case.  Likewise, we find no harmless errors which, when taken cumulatively, would have the effect of depriving Moore of a fundamentally fair and impartial proceeding before the trial court.  ***Byrom v. State***, 863 So. 2d 836, 847 (Miss. 2003).

¶29.    This issue has no merit.

### CONCLUSION

¶30.    For the reasons stated, we reverse the judgment of the Court of Appeals and reinstate and affirm the final judgment of the Lauderdale County Circuit Court denying Fredrick Moore's Petition for Post-Conviction Collateral Relief.

¶31.    **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED AND THE JUDGMENT OF THE LAUDERDALE COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED**.

**SMITH, C.J., WALLER, P.J., EASLEY, RANDOLPH AND LAMAR, JJ., CONCUR. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DICKINSON, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ, P.J.**

**DICKINSON, JUSTICE, DISSENTING:**

¶32.    This case is really not so complicated.  The following facts are undisputed:  It is not illegal in Mississippi to drive an automobile with only one working tail light.  The police officer in this case stopped Frederick Moore for no other reason than that the automobile he

16

was driving had only one working tail light. Thus, the officer had no valid reason to stop Moore. After stopping Moore without a valid reason, the officer conducted an inventory search of the vehicle and found a gun under the seat. Since Moore previously had been convicted of a felony, it was illegal for him to have the gun, so he was arrested and indicted for being a felon in possession of a firearm.

¶33. Ordinarily, the Fourth Amendment to the United States Constitution requires that a stop must be lawful. However, I agree with the majority that a reasonable, good-faith mistake as to the law may excuse that Fourth Amendment requirement. The only salient issue on which I disagree with the majority is whether – under such circumstances – the officer is required to inform the court of the reasonable, good-faith basis for the mistake. Because the majority simply assumes – with absolutely no proof in the record – that the officer had a reasonable, good-faith basis for his mistake; and because I believe today's decision is a dangerous precedent which opens the door to unexplained, unlawful stops, I must respectfully dissent.

¶34. At the outset, I wish to point out two things. First, my dissent should not be read to indicate that I believe the officer involved in this case was unreasonable, or lacked good faith. He may very well have had a reasonable, good-faith explanation for his misunderstanding of the law. But, based on the record, we simply don't know. I believe this Court's precedent, the United States Supreme Court's precedent, and the Fourth Amendment to the United States Constitution require the officer to articulate to the trial judge at a

suppression hearing, some evidence that his mistake was made in good faith. It cannot simply be presumed.

¶35. Second, my dissent should not be read to say that the trial judge erred in any way when he took Moore's plea. I find no error in the trial judge's conduct of the plea hearing. However, under the unique and specific facts of this case, the trial court should have conducted a hearing on Moore's petition for post-conviction relief.

¶36. Moore's petition alleges that – prior to recommending that he plead guilty – his counsel failed to investigated the facts, and failed to inform Moore that he had a substantial legal challenge to the only evidence against him; and that his counsel failed to bring the legal challenge to the trial court's attention. The unique and unusual facts in the record before us appear to support Moore's claim. He was at least entitled to a hearing on suppression of evidence.

¶37. Moore's court-appointed counsel did not investigate the facts surrounding the arrest, and did not inform Moore that he had a substantial legal challenge to the admissibility of the only evidence against him. Instead, his counsel told him, "you can't beat it at trial" and advised him to plead guilty. Upon learning that his counsel failed to investigate the facts and circumstances of the search and failed to inform him that he had a substantial issue to present at a suppression hearing,[6] Moore filed a petition for post-conviction relief, asking the circuit

---

[6]I emphasize that I have no opinion as to whether Moore would prevail at such a hearing. I am convinced, however, that, prior to being advised to plead guilty, Moore was entitled to be informed that he had a substantial legal challenge to the only evidence against him.

18

court to grant him a hearing on the question of whether his counsel was ineffective. Without holding a hearing, the circuit court denied his petition, and Moore appealed. The Court of Appeals, with only one dissenting vote, reversed and ordered a hearing. The State filed a petition for certiorari, which this Court granted.

**ANALYSIS**

¶38.    In its petition for certiorari, the State tells us that "the case of ***Harrison v. State***, 800 So. 2d 1134 (Miss. 2001), shows the way." I agree. The deputies in ***Harrison*** were

> parked in a construction area . . . marked with a 60 mile per hour speed limit, and there were orange barrels closing off one lane of traffic. . . . The deputies stopped Harrison for driving 67-70 miles per hour in a 60 miles per hour construction zone after visually observing that Harrison appeared to be exceeding the 60 mile per hour speed limit.

*Id*. at 1135.

¶39.    Turns out the posted speed limit was not the real speed limit (which was 70 miles per hour) at that time. Did the officers make a mistake of law? Yes. Was a reasonable, good-faith explanation for the officers' mistake articulated to the trial court and placed in the record? Yes. The officers reasonably thought the speed limit was 60 miles per hour because that was the speed limit that was posted. The incident occurred in a construction zone with a posted 60-mile-per-hour speed limit. However, the posted speed limit was in effect only at certain times of the day, although not when the officers made the stop.

¶40.    After reviewing these facts, and recognizing that there was a "posted sixty mile per hour speed limit," this Court held that "the deputies had an objective reasonable basis for believing that Harrison violated the traffic laws." *Id*. at 1139 (emphasis added).

19

Accordingly, **Harrison** is completely distinguishable, and stands as no justification whatsoever for the majority's holding today.

¶41.    Furthermore, the cases cited by the **Harrison** Court also required the showing of an objective, reasonable, good-faith basis for the officer's mistake in law. The **Harrison** Court cited **United States v. Wallace**, 213 F. 3d 1216 (9th Cir 2000) for the proposition that "finding probable cause existed because of reasonable belief that suspect was committing crime, even though officer was mistaken . . . ." **Harrison v. State**, 800 So. 2d at 1139 (emphasis added). The **Harrison** Court cited **United States v. Sanders**, 196 F. 3d 910 (8th Cir. 1999), for the proposition that "officer objectively had reasonable basis for probable cause, even though vehicle was not technically in violation of statute)." **Harrison v. State**, 800 So. 2d at 1139 (emphasis added). The **Harrison** Court cited **DeChene v. Smallwood**, 226 Va. 475, 311 S.E. 2d 749 (1984), for the proposition that "arrest resulting from mistake of law should be judged by the same test as one stemming from mistake of fact; whether the arresting officer acted 'in good faith and with probable cause.'" **Harrison v. State**, 800 So. 2d at 1139 (emphasis added).

¶42.    Again, based on this precedent and this Court's reasoning for its decision, **Harrison** stands as no authority for today's unwise decision. There is not one micron of evidence in the record before us that the officer had a reasonable, objective and/or good-faith belief that driving with only one tail light was against the law. In essence, the majority announces a new rule: Where an officer says no more than "I thought it was against the law," this Court will simply assume the officer had a reasonable, good-faith basis for the mistake.

20

¶43.    In its decision with which I agree, the Court of Appeals[7] attempted to follow the law as announced by Justice Randolph in his erudite opinion in *Walker v. State*, 913 So. 2d 198 (Miss. 2005):

> A traffic stop is constitutional no matter the officer's subjective intent, so long as the officer had probable cause to believe that a traffic violation occurred. [citations omitted]
>
>> This is an objective test based on the facts known to the officer at the time of the stop, not on the motivations of the officer in making the stop. On the other hand, if it is clear that what the police observed did not constitute a violation of the cited traffic law, there is no "objective basis" for the stop, and the stop is illegal.
>
> *Id*. at 225-26 (Miss. 2005) (quoting *United States v. Escalante*, 239 F. 3d 678, 680-81 (5th Cir. 2001).

¶44.    I am not prepared to find a Fourth Amendment violation in every traffic stop where the officer is mistaken as to the law. However, I cannot agree with the majority that courts may simply assume that the officer had an objective, reasonable, good-faith basis for the mistake. The officer should, at a minimum, be required to inform the court of the circumstances which led to the mistaken belief in the law. Where that happens, and the court finds the officer's explanation is reasonable and in good faith, the court should find that probable cause for the stop existed. However, where – as here – no explanation whatsoever has been offered, the court should hold a hearing. That is what was ordered by the Court of Appeals, and I agree.

---

[7]*Moore v. State*, 2007 Miss. App. LEXIS 242, \*\*4-5 (Miss. Ct. App. April 17, 2007)

¶45. For the reasons stated, I would find that this certiorari review was improvidently granted or, in the alternative, I would affirm the Court of Appeals.

**DIAZ, P.J., JOINS THIS OPINION**.