DICKINSON, Presiding Justice,
concurring in part and dissenting in part:
¶ 97. One important feature of our criminal justice system not found in many jurisdictions around the world is our constitutional emphasis on the right to due process of law, a right that, among other things, theoretically provides criminal defendants—no matter how specious or unlikely their theories or claims—the opportunity to be heard in their defense.
¶98. In death-penalty cases, like this one, this Court, through its precedent, claims that our standard of review “ ‘is one of ‘heightened scrutiny’ under which all bona fide doubts are resolved in favor of the accused.’ ”[14] In truth, in many cases, the State appears to receive the benefit of every doubt, and the Court appears to value procedural nicety over constitutionally protected rights. This case is just such a case.
¶ 99. Charles Crawford’s attorney made a strategic decision to base his capital-murder defense on Crawford’s mental health. In the guilt phase, he presented an insanity defense. In the mitigation phase, he attempted to show that Crawford’s mental health rendered him less culpable and not deserving of death. We *1169 cannot—and I do not—now question that strategy. But, when counsel chose that defense strategy, he assumed the duty to employ it with constitutionally mandated effectiveness. Indeed, he had an obligation to support that defense with an appropriate investigation—and in this case, there was none. Before trial, an expert witness informed him further testing was necessary to adequately convey Crawford’s mental health to the jury. He made no attempt to obtain that testing.
¶ 100. So Crawford now claims his trial counsel’s failure to investigate and obtain the testing amounted to constitutionally ineffective representation. I pause here to emphasize that the matter before us today is not whether Crawford’s counsel was or was not ineffective. The only matter before us is whether Crawford should be heard on the matter.
¶ 101. The majority, without providing him an in-court opportunity to be heard, denies his claim out of hand. Why? Because, in the majority’s eyes (not the fact-finder’s eyes, mind you), any expert testimony—no matter how lacking, and no matter how unprepared because of the lack of necessary testing—was enough expert testimony.
¶ 102. We are not left to guess whether Crawford, should he be given the opportunity, has evidence to present to the factfin-der. He now has obtained the testing his trial counsel knew was necessary but failed to pursue. Crawford presents us detailed expert opinions that would strongly have supported his defense. His burden before this Court—at least according to the standard of review our opinions claim we observe—is slight. To get a hearing, a petitioner “ ‘must allege ... with specificity and detail’ that his counsel’s performance was defective and that the deficient performance prejudiced the defense,”[15] and the" standard by which we review capital cases, including petitions for post-conviction relief “ ‘is one of ‘heightened scrutiny" under which all bona fide doubts are resolved in favor of the accused.’ ”[16]
¶ 108. At a minimum, Crawford has made the substantial showing necessary to obtain an in-court opportunity so that testimony may be heard and weighed by a factfinder with the well-recognized need to observe witness testimony firsthand. But rather than provide him a hearing, the majority prefers to serve as quasi-factfin-ders, without a hearing, and to deny his claim outright.
ANALYSIS
¶ 104. This Court rightly has recognized that a petitioner under sentence of death possesses the right to effective representation in post-conviction proceedings.[17] Post-conviction counsel’s deficient performance cannot preclude the petitioner’s opportunity to file meritorious claims for relief.[18] If a petitioner provides us a reasonable basis to believe that a circuit judge could find the necessary elements to show that his first post-conviction counsel provided objectively unreasonable representation, we should grant leave to proceed with a successive petition.[19]
*1170 ¶ 105. Here, Crawford has presented sufficient information to conclude that his first post-conviction counsel provided objectively unreasonable representation. ,,In Grayson v. State, in which this Court recognized the right to effective post-conviction counsel in death-penalty cases, Justice Lamar, writing for the majority, detailed the errors which constituted counsel’s deficient performance. The majority stated:
Ryan described how the MOCPCC [Mississippi Office of Capital' Post-Conviction Counsel] was understaffed, underfunded-and overworked.... He stated that minimal, if any, investigation, research, and evaluation were conducted prior to filing, the PCR petitions. Ryan stated that,, as of January 2003—about one month before Grayson’s PCR petition was due—he was the only attorney employed' by the MOCPCC and had done nothing in Grayson’s case.
These affidavits reveal that minimal investigation into Grayson’s PCR claims was conducted a few days before the PCR motion was due. The only investigation conducted prior to filing the peti.tion were..a few phone calls to jurors who would not discuss the case, one request for records—which were not received—and brief interviews with and affidavits from four of Grayson’s family members. The MOCPCC did not conduct any independent discovery or investigation and did not seek expert assistance.' Counsel for Grayson did not obtain the files from the prosecutor, from law' enforcement, or from the State’s experts, even though counsel was entitled to these files pursuant to Rule 22(c)(4)(ii) of the Mississippi Rules of Appellate Procedure. Trial counsel was never interviewed. Even though the Court allowed sixty additional days to file a supplemental PCR, no additional investigation was conducted., This Court found the issues. raised in the PCR pleadings were “virtually identical” to those asserted on direct appeal. This Court noted the lack of evidentiary support for many of the claims.[20]
¶ 106. Here, Crawford provides a strikingly similar history to support his claim of deficient performance by prior post-conviction counsel. Thomas C, Levidiotis was appointed by the Circuit Court of Tippah County to represent Crawford in the preparation of his first petition for post-conviction relief. Levidiotis, who ultimately withdrew after a dispute as to compensation, filed Crawford’s initial petition. He has now provided an affidavit, explaining that he lacked adequate time and funds to investigate Crawford’s claims and prepare his petition.
¶ 107. Levidiotis admits that he “was unable to conduct any mitigation investigation for Mr. Crawford’s post-conviction petition,” and he states:
I knew that I would need to identify additional mental health experts to evaluate Mr. Crawford, and intended to rely on Gary Mooers to make this determination. I also needed to develop a com'prehensive psychosocial history of Mr. Crawford, and intended to have Gary Mooers do the work necessary to develop that history. The particular issue I believe was key to developing a mitigation case was uncovering' Mr. Crawford’s true psychiatric problems and his reasons for suppressing memories. However, because the circuit court denied my request for expert funds, I was unable to retain Dr, Mooers and additional mental health experts to conduct a complete evaluation of Mr. Crawford.
*1171 ¶ 108. He goes on to state that, because Crawford’s trial experts “did not have access to many - of Mr. Crawford’s health records, and did not prepare a psychosocial history,” that he “had a particular obligation to take on this mitigation investigation,” but “lacked the expertise, training, and experience to identify and develop mitigation evidence.”
¶ 109. After Levidiotis withdrew, the Mississippi Office of Capital Post-Conviction Counsel acquired Crawford’s case. William Clayton, a staff attorney in that office, worked on Crawford’s petition. In his affidavit, Clayton explains that:
[d]ue to severe staffing and resource shortages, the office was drowning in work when I started to work there.... I had to manage an excessive caseload with very limited resources and virtually no professional litigation support, including the use of experts. ... Our office needed to do an investigation and supplement the PCR to ensure that all of Mr. Crawford’s post-conviction claims were developed and properly plead[ed]. Although the MOCPCC had Mr. Crawford’s case for several months prior to my arrival, it did not appear that any signiftcant work had been done on the case by the time I started, to work on it ... a crushing caseload, staff turnover, time limitations, and inadequate investigative and expert resources prevented me from conducting an adequate investigation and filing a complete supplement to Mr. Crawford’s PCR. I recall that I made one trip to Mr. Crawford’s home town to meet with his father, and I also met with Mr. Crawford on about two occasions... - To the best of my knowledge, the MOCPCC did not attempt to obtain Rule 22 discovery. ... the MOCPCC did not conduct any juror interviews. I spoke to Mr. Crawford’s father on a few occasions, and our office may have interviewed one other family member.
(Emphasis added.)
¶ 110. No meaningful difference exists between the performance of Grayson’s counsel and that of Crawford’s first post-conviction counsel. Moreover, this Court’s opinion denying Crawford’s initial post-conviction petition identifies the pervasive deficient performance counsel provided.[21] One passage from that opinion particularly conveys counsel’s failure to investigate.
However, Crawford has failed to even allege any information outside of the knowledge of counsel, much less provide the necessary affidavits of such. With such a glaring lack of evidence by which to determine if Crawford was prejudiced, there is no need to even *1172 examine the reasonableness of counsels’ investigation.
The lack of new evidence also impacts Crawford’s claim that counsel was ineffective in their presentation of evidence during the penalty phase of trial. Because Crawford is unable to challenge the investigation, we are left with no alternative but to treat it as complete and judge counsels’ decisions regarding the presentation of evidence as if they had been made according to a complete investigation and, thus, give great deference to any claims of trial strategy.[22]
¶ 111. The majority concludes that Lev-idiotis did perform an objectively reasonable investigation because a three-justice panel of this Court denied his request for expert funds. This holding is misguided for several reasons. First, the three-justice panel denied Levidiotis’s request for funds to hire a mitigation investigator. But, Crawford’s present contentions deal not with the failure to hire a mitigation investigator, but rather with the failure to procure the necessary expert testimony related to Crawford’s mental health.
¶ 112. Second, even if the three-justice panel had denied a request for funds to procure that expert testimony, the panel’s stated reason for denying the request was that Crawford’s attorney failed to show the funds were necessary. As will be explained further in the prejudice analysis, we now know those funds were necessary. Indeed, the failure of Crawford’s counsel to make that showing before the three-justice panel supports a finding that he provided ineffective representation.
¶ 113. Third, Levidiotis ultimately withdrew as Crawford’s first post-conviction counsel, and his representation was then assumed by the Office of Capital Post-Conviction Counsel, which was created, and funded, to perform this type of investigation in capital-post-conviction proceedings. But, more importantly, the majority’s circular reasoning overlooks the requirements of due process. The majority first finds Crawford’s application for a hearing is procedurally barred because his first post-conviction counsel did not perform an objectively unreasonable investigation. To support this finding, the majority points out that counsel’s investigation was not unreasonable because this Court denied him the funds necessary to prepare that application, so there really was nothing he could do. And Crawford’s claims lacked merit because his counsel failed to support the application with the information those funds (which this Court denied) would have procured. The majority effectively holds that Crawford’s first post-conviction counsel did not deny him adequate representation—this Court did.
¶ 114. An ineffectiveness challenge based on counsel’s failure to investigate must focus on whether counsel’s decision to forego certain investigation was reasonable.[23] Where, as here and in Grayson, counsel fails to investigate information which counsel knows is necessary adequately to present the petitioner’s claims, the investigation cannot be deemed reasonable.
¶ 115. So I would find that Crawford’s first post-conviction counsel provided objectively unreasonable representation. But, as with a claim of ineffective trial counsel, first post-conviction counsel’s failure also must create prejudice to consti *1173 tute ineffective assistance.[24] To determine whether prejudice exists from first post-conviction counsel’s deficient performance, this Court considers whether Crawford has made a substantial showing of merit on his present claims.[25] I believe he has done so on one claim.

Trial Counsel’s Failure to Obtain a Complete Psychological Evaluation

¶ 116. Crawford claims that he received constitutionally ineffective assistance because trial counsel failed to investigate Crawford’s organic brain damage. Despite the fact that a defense expert told trial counsel before trial that certain psychological testing could explain Crawford’s behavior through the existence of organic brain damage, counsel never obtained that testing or requested funds for such testing from the circuit court. Then, counsel attempted to present an insanity defense and mitigation case based on Crawford’s mental health, without ever subjecting Crawford to necessary psychological testing.
¶ 117. An ineffectiveness challenge based on counsel’s failure to investigate must focus on whether the decision to forego certain investigation was reasonable.[26] We have stated that “psychiatric and psychological evidence is crucial to the defense of a capital murder case”[27] and that “there is a critical interrelation between expert psychiatric assistance and minimally effective representation.”[28] Further, though this Court gives deference to counsel's strategic decisions, we have found that “it was unreasonable for counsel not to pursue psychological evidence” when the investigation fails “to follow through on the chosen strategy.”[29]
¶ 118. Crawford’s counsel strategically decided to present an insanity defense and to raise similar claims during the penalty phase. This strategy hinged on Crawford’s mental health and, as counsel’s chosen strategy, required counsel to follow through with a reasonable investigation to support that strategy.
. ¶ 119. Now affidavits show counsel failed to do so. Dr. Mark Webb evaluated Crawford and testified for the defense in Crawford’s trial. Prior to trial, Dr. Webb discovered that “Crawford had a history of head injuries and seizures as well as a history of substance abuse.” He knew that “[a]ll of these things can cause organic brain damage” and that “the presence of brain damage would act as significant mitigating evidence in and of itself since symptoms of organic impairment include perceptual disturbance (misinterpretations, hallucinations), disorientation, personality change, and decreased control over sexual, aggressive, and acquisitive impulses.” He also noted that “certain types of brain damage decrease one’s ability to control impulses.... ”
¶ 120. Dr. Webb concluded that Crawford should “undergo a neuropsychological battery to determine the existence and extent of any brain dysfunction” and that “until such is done, it cannot be said that *1174 Mr. Crawford has had a complete psychological workup.” And Dr. Webb informed Crawford’s counsel prior to trial that Crawford needed this testing.
¶ 121. Crawford’s trial attorneys admit they failed to obtain a complete psychological evaluation in preparation for trial. James Panned, Crawford’s lead trial counsel, states that:
Although I used an insanity defense in all three of Mr. Crawford’s trials, I did not retain a mental health expert to conduct a forensic evaluation of Mr. Crawford. Instead, I relied on the Parehman psychiatrist, Dr. Stanley Russell, who treated Mr. Crawford during his period of incarceration prior to the capital murder trial, and Dr. Mark Webb, a psychiatrist retained by Mr. Crawford’s sister. They gave conflicting assessments and diagnosis of Mr. Crawford .... I believe the inadequacies of their evaluations arose because we' did not have resources to conduct a thorough and reliable investigation of Mr. Crawford’s background.
¶ 122. Likewise, David Bell, Pannell’s co-counsel, states:
we did not use the services of a mitigation investigator for this case. We did not file a motion requesting funds to hire a mitigation investigator. Given Mr, Crawford’s history of mental health problems, I believe that a detailed and thorough mitigation investigation was critical to adequately prepare for the penalty phase of Crawford’s trial.
we also did not seek funds for or hire a mental health expert or neuropsy-chologist to evaluate and test Mr. Crawford. I believe this testing and evaluation were necessary, given Mr. Crawford’s history, for the defense to adequately prepare for and present the penalty phase of the trial.
¶ 123. Dr. Webb informed the attorneys prior to trial that a full psychological evaluation was necessary to present Crawford’s claims adequately. In light of Crawford’s affidavits, I must conclude that Crawford has made a substantial showing that his trial attorneys provided objectively unreasonable representation by failing to follow through with an investigation into known evidence necessary to present their chosen trial strategy.
¶ 124. But, to prevail in the circuit court, Crawford also would have to show that “there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.”[30] This showing requires less than a preponderance of the evidence because “[t]he result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.”[31] And to obtain leave to proceed in the trial court, Crawford need only make a substantial showing that he can meet that burden.
¶ 125. Crawford’s current counsel has obtained the testing that Dr. Webb advised trial counsel to obtain. Drs. Siddar-tha Nadkarni, Tora Brawley, and Donna Schwartz-Watts have submitted expert reports, detailing their findings.
¶ 126. Dr. Nadkarni states:
Charles Crawford suffers from Severe Brain Injury, Partial Epilepsy, and Migraines. His neurological examination is grossly abnormal and reveals signifi *1175 cant central nervous system injury with evidence of Brain Injury as well.
I have no doubt that Charles Crawford was in an Epilepsy related delirium at the time the capital murder was committed, resulting from acute seizures and persistent post-ictal confusion in what was most probably non-convulsive status epileticus. As such, he would have no awareness of his actions, nor agency in committing them. He is a severely brain-injured man (corroborated both by history and his neurological examination) who was essentially not present in any useful sense due to epileptic fits at the time of the crime,[32]
¶ 127. Dr. Schwartz-Watts states:
Mr. Crawford suffers from a neurocog-nitive disorder due to his history of traumatic brain injury and his seizure disorder with behavioral disturbance. He has cognitive deficits in his verbal memory, verbal learning, frontal lobe ‘function and motor function.
Persons with seizure disorder often have amnesia for periods of time after their seizures. Seizures with temporal lobe focus can manifest inter-ictal behaviors including hypersexuality, hypergraphia, and hyperreligiosity.
¶ 128. In Doss v. State, this Court found prejudice in a similar investigatory failure.[33] There, this Court relied on the decision of the United States Supreme Court in Rompilla v. Beard, where the Court determined that the failure to present evidence of known .organic brain damage prejudiced a defendant’s capital-murder sentencing phase.[34] Similar to counsel’s ineffective assistance in Ross and Rompilla, Crawford’s counsel failed to conduct an adequate investigation into Crawford’s psychological health, which, if performed, would have .uncovered organic brain damage. That brain damage, according to Crawford’s experts, significant ly impaired or., eliminated his ability to control his. actions. I believe Crawford has made a substantial showing .that. his trial counsel should have investigated and discovered this evidence and that it likely would have affected the decision of at least one juror considering .Crawford’s insanity defense and mitigation evidence.
¶ 129. In the evidentiary hearing, Strickland requires Crawford to show only a reasonable probability—less than a preponderance of the evidence—that the result would have been different.[35] Given that both criminal verdicts and death sentences must be unanimous, Crawford need only show a reasonable probability that one juror would have changed his or her mind. And, given that Crawford has obtained more complete, detailed, and nuanced expert testimony than he had at trial, he must have made-the mere substantial showing that he can meet this burden, which is all he must do at this stage of the litigation.
¶ 130. Certainly, the circuit judge, as factfinder in the evidentiary hearing, would examine the expert testimony Crawford had at trial, and that which he has now obtained, and easily could conclude that Crawford failed to meet his burden of proof. In that event, this Court could not *1176 reverse unless that conclusion was clearly erroneous.[36]
¶ 131. But because Crawford has made a substantial showing of merit on this claim, he satisfies the Grayson prejudice prong for ineffective assistance of first post-conviction counsel and is entitled to proceed with his successive petition on this claim, so that the factfinder may make that call. For this reason, I cannot join the majority decision to deny Crawford that opportunity.
KITCHENS AND KING, JJ., JOIN THIS OPINION.

. Grayson v. State, 118 So.3d 118, 125 (Miss.2013) (quoting Chamberlin v. State, 55 So.3d 1046, 1049-50 (Miss.2010) (quoting Flowers v. State, 773 So.2d 309, 317 (Miss.2000))) (emphasis added).

. Hymes v. State, 703 So.2d 258, 261 (Miss.1997) (quoting Brooks v. State, 573 So.2d 1350, 1353 (Miss. 1990)).

. Grayson, 118 So.3d at 125 (quoting Chamberlin, 55 So.3d at 1049-50 (quoting Flowers, 773 So.2d at 317)).

. Grayson, 118 So.3d at 126 (citing Jackson v. State, 732 So.2d 187, 191 (Miss.1999); Chamberlin, 55 So.3d at 1049).

. Grayson, 118 So.3d at 128.

. Id. at 127-29.

. Id. at 127-28 (internal citations omitted).

. Crawford v. State, 867 So.2d 196, 207-10 (Miss.2003) ("Notwithstanding Crawford’s failure to cite any authority in support of his argument, we.will swiftly deal with this issue”; "Crawford, however, cites no authority for this proposition”; “Crawford has not alleged such facts here”; Crawford "has failed to include an affidavit from any expert which states what exculpatory testimony they would have provided were Crawford able to afford it”; "he cites no authority for the proposition that any of his counsel's efforts in these regards have fallen below any kind of standard”; "Crawford makes a general assertion that ‘counsel failed to ensure that a proper investigation take place.’ However, he states nothing more and does not allege what counsel did or failed to do in investigating”; "This would have put Crawford and counsel for this petition on notice as to the levels of Dilantin that Crawford may have been on, yet there is no affidavit provided in the petition as to the effects of such a dosage on Crawford”; "Thus, it is now Crawford’s burden to show facts which would have changed since the original determination or to provide an affidavit by a doctor who would have testified as to his incompetency, or perhaps to have simply found how much medication Crawford was on at the time and provided a medical opinion as to the effects of such a level of medication. However, he has not done so.”).

. Id. at 218 (emphasis added).

. Doss v. State, 19 So.3d 690, 695 (Miss.2009) (quoting Strickland v. Washington, 466 U.S. 668, 690-91, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

. Grayson, 118 So.3d at 128-29.

. Id.

. Doss, 19 So.3d at 695 (quoting Strickland, 466 U.S. at 690-91, 104 S.Ct. 2052).

. State v. Tokman, 564 So.2d 1339, 1343 (Miss.1990) (citing Ake v. Oklahoma, 470 U.S. 68, 80, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985)).

. Tokman, 564 So.2d at 1343 (citing Beavers v. Balkcom, 636 F.2d 114, 116 (5th Cir.1981); Wilson v. Butler, 813 F.2d 664, 672 (5th Cir. 1987); Greer v. Beto, 379 F.2d 923, 925 (5th Cir. 1967); Gray v. Lucas, 677 F.2d 1086, 1095 (5th Cir. 1982)).

. Tokman, 564 So.2d at 1344 (citing Leatherwood v. State, 473 So.2d 964 (Miss.1985)).

. Strickland, 466 U.S. at 694, 104 S.Ct. 2052.

. Id. at 693-94, 104 S.Ct. 2052 (emphasis added).

, (Emphasis added.)

. Doss, 19 So.3d at 708.

.Id. (citing Rompilla v. Beard, 545 U.S. 374, 393, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005)).

. Strickland, 466 U.S. at 694, 104 S;Ct. 2052.

. Rowland v. State, 42 So.3d 503, 506 (Miss. 2010) (citing Moore v. State, 986 So.2d 928, 932 (Miss.2008)).