## TYLER *v.* CAMPBELL.

The court, in affirming the decree below, declines to deliver an extended opinion, as the determination of the case depends upon matters of fact, and no doubtful or difficult question of law is involved.

APPEAL from the Circuit Court of the United States for the Southern District of New York.

*Mr. Wheeler H. Peckham* and *Mr. Cortlandt Parker* for the appellant.

*Mr. Charles B. Moore* and *Mr. Clifford A. Hand* for the appellee.

MR. JUSTICE GRAY delivered the opinion of the court.

Upon a careful scrutiny of the evidence by each of the judges, a majority of the court is of opinion that the proofs do not make out the breach of trust alleged, and that the view of the defendant's obligations, which the plaintiff has undertaken to assert since the loss occurred, is inconsistent with the previous conduct and mutual dealings of the parties.

As the decision involves no difficult or doubtful question of law, but a pure question of fact, depending on the weighing and comparison of varying and conflicting evidence, it can be of no value as a precedent, and the preparation of an extended

opinion would not be according to the practice of the court, and would serve no useful purpose.

*Decree affirmed.*

MR. JUSTICE FIELD, with whom concurred MR. JUSTICE HARLAN and MR. JUSTICE MATTHEWS, dissenting.

I am unable to assent to the decision of the majority of the court, and, as it involves an important principle, I am unwilling to let it pass in silence. I do not perceive any serious controversy as to the material facts upon which the liability of the defendant is asserted, and in my judgment there is no doubt as to the law applicable to them.

Divested of immaterial details, the case is briefly this: In January, 1865, one James Monroe, of New Jersey, applied to the complainant for a loan of money, — at first specified to be $30,000, afterwards increased to $50,000, — for use in connection with the Morris County Bank, a corporation of that State, of which Thomas E. Allen was president. The application was made through the defendant, Robert B. Campbell; and the proposition was to give as security for the loan an assignment of two mortgages on a mine, known as the Hibernia mine, in that State, then held by the bank, accompanied with a lease of the property. As the result of the negotiation the complainant agreed to loan $50,000 to Monroe upon an assignment to Campbell of the two mortgages and lease, in trust as security for the loan. In pursuance of this agreement the bank assigned the mortgages and lease to Monroe, who assigned them to Campbell, with an irrevocable power of attorney to the latter to collect the money due on the mortgages and pay the loan at its maturity. Both assignments were executed Feb. 11, 1865, and were to be void if the loan, with interest, was paid, — the one to Monroe, if payment was made by the 11th of June following, and the one to Campbell, if payment was made by the 5th of August. The complainant thereupon gave to Campbell securities, which on sale produced the $50,000, and this sum was delivered to Monroe. Of the two mortgages one was for $100,000 and the other for $75,000. Both were, at the time of the assignment, in process of foreclosure in chancery in New Jersey, and of this fact Campbell was fully aware. A decree

for the sale of the premises was made in the foreclosure proceedings on the 1st of March following. On the 20th of June the sale took place. Campbell was present and knew of it, and of the amount realized, which was $86,400. He did not, however, place the assignment on record in the office of the register of the county, though it was acknowledged so as to be entitled to registry; nor did he give any notice of it to the solicitor engaged in the foreclosure proceedings, or to the master who made the sale, but allowed all proceedings to be conducted, and the parties connected therewith to act, as though no assignment had ever been made to him. Nor was he merely passive in the matter. Though the assignment was executed expressly to take from the mortgagee, the bank, and its assignee, Monroe, the control of the mortgages, and secure an application of their proceeds to the payment of the loan, he authorized the president of the bank to receive the proceeds. His letters show this, and the only reason he assigns for it is that he supposed the president would prefer to receive them. "I know," he writes to that officer, "that you would prefer that it [the money] should be received from the master by yourself, and, therefore, I sent you the request to collect it and send it to me." The president of the bank did collect it and keep it, and subsequently became bankrupt. The complainant thereby lost $30,000 of his loan; only $20,000 of the $50,000 were ever received. To charge Campbell, by whose negligence this money was lost, and compel him to pay it, this suit was brought.

If proof of the facts thus stated depended upon uncertain and conflicting testimony, I might accede to the disposition of the case made by the majority of the court; but these facts are either not controverted, or appear in the statements of the defendant himself. After the conversion of the money by the president of the bank, a suit was brought against him by the complainant, who, to obtain an order for his arrest, made an affidavit setting forth the particulars of the loan, the assignment of the mortgages, their foreclosure, the sale of the premises mortgaged, and the receipt and use of the money by the president. In that affidavit he states — I quote his words — that when the loan was made and the assignments were received he

"instructed said Robert B. Campbell to take all necessary steps to make said assignments available to secure said loan" to him, the deponent; that Campbell, notwithstanding this instruction, instead of requiring the master to pay the proceeds of the sale into the court of chancery so that the loan might be paid out of them, did, through confidence in the honesty of the president of the bank, permit the master to pay the proceeds to its solicitor, who afterwards paid them over to the president directly, or upon his order. This affidavit is accompanied with one of Campbell, who states that he had read the complainant's affidavit and knew the contents thereof, and that the matters there set forth in relation to himself and his action in the matters referred to were true. Thus it appears from the sworn statement of Campbell that his action, which caused the loss of the money, was in direct disregard of instructions to him.

Under these circumstances, why should he not be held to make good the loss? By the assignment to him he became a trustee of the mortgages for the complainant. He did not take the assignment on his own account; it was for the lender to secure the loan. In taking it he assumed a duty towards his *cestui que trust* which he could not disregard. It was to see that the assignment effected its purpose, so far, at least, as to withdraw the control of the mortgages from the mortgagee, the bank, and its assignee, Monroe, and thus render them available to the lender.

In stating the duties of trustees, Lewin, in his work on trusts, says:—

"The first duty of trustees is to place the trust property in a state of security. Thus, if the trust fund be an equitable interest, of which the legal interest cannot be at present transferred to them, it is their duty to lose no time in giving notice of their own interest to the persons in whom the legal estate is vested; for otherwise, he who created the trust might incumber the interest he has settled in favor of a purchaser without notice, who, by first giving notice to the legal holder, might gain a priority. If the trust fund be *a chose in action* as a debt, which may be reduced into possession, it is the trustee's duty to be active in getting it in; and any unnecessary delay

in this respect will be at his own personal risk." Lewin, c. 14, sect. 1, 6th Eng. ed.; *Jacob* v. *Lucas*, 1 Beav. 436; *Caffrey* v. *Darby*, 6 Ves. Jr. 488; *Platel* v. *Craddock*, Cooper, 481; *Mc-Gachen* v. *Dew*, 15 Beav. 84; *Wiles* v. *Gresham*, 2 Drew. 258; *Cooper* v. *Day*, 1 Rich. (S. C.) Eq. 26.

To the same effect is the language of Perry in his treatise on trusts. The trustee must take such steps as will prevent incumbrances from being placed upon the property transferred to him, and, of course, as will prevent the possibility of its destruction, as in this case, from its conversion by the original assignor or settlor. "If the trust fund," he says, "consists in part of notes, bonds, policies of insurance, and other similar *choses in action*, notice should be given to the promisors, obligors, or makers of the instruments." Law of Trusts, sec. 438.

This doctrine is supported and asserted in different forms by a great number of adjudged cases. That a trustee, by whose negligence of a plain duty the property in his hands is wasted or injured, is chargeable with the loss, is a doctrine which pervades the whole law of trusts. And it is the only doctrine which will insure fidelity in trustees and protection to the interests of *cestuis que trust*. As justly observed by counsel, the simpler and easier the act required, the clearer the duty and liability for its neglect. If any distinction can be made in liability where duties are neglected, the liability should be the more strictly enforced where, as in a case like this, the duty required was the mere observance of ordinary prudence.

I think the decree should be reversed.