# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

JENELL CAPREICE BAILEY,

        Defendant-Appellee.

UNPUBLISHED
April 3, 2018

No. 339122
Macomb Circuit Court
LC No. 2016-003172-FC

Before: MURRAY, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

The prosecution appeals by leave granted[1] the trial court's order granting defendant's motion to withdraw her guilty plea to second-degree murder, MCL 750.317, operating a vehicle while intoxicated causing death, MCL 257.625(4)(a), and operating a vehicle while license suspended, revoked, or denied causing death, MCL 257.904(4), as a second habitual offender, MCL 769.10. We reverse and remand for proceedings consistent with this opinion.

## I. BACKGROUND

This case arises from a fatal vehicular collision at Gratiot and 10 Mile Road, in Eastpointe, Michigan, on June 8, 2016, between defendant's vehicle and the vehicle of Pavlos Dion. Between 10:00 p.m. and 11:00 p.m., defendant was driving her minivan erratically on northbound Gratiot. She was speeding and weaving between lanes. Amber Bianga (Bianga) saw defendant run two red lights, without applying her brakes at either signal. Bianga then saw defendant's minivan hit Dion's vehicle while driving in the middle lane. According to Bianga, Dion's car was "really totaled."

Officer Robert McNeil (Officer McNeil), of the Eastpointe Police Department, was dispatched to the scene. Officer McNeil found defendant sitting in the driver's seat of her minivan. She said that she drank two beers earlier that night, and he observed beer cans in her vehicle. Defendant failed all of the field sobriety tests that Officer McNeil performed. The

---

[1] *People v Bailey*, unpublished order of the Court of Appeals, entered July 17, 2017 (Docket No. 339122).

-1-

officer in charge, Detective Joshua Ignace (Detective Ignace), also observed beer cans in defendant's minivan, and a full can of beer on the floorboard that was cold to the touch. There were no brake or skid marks on the road at the area of impact, indicating that defendant did not brake before hitting Dion's car. Detective Ignace obtained defendant's driving record, which indicated that her license expired in 2004. She had four prior drunk driving convictions, and several other driving with suspended license convictions. Defendant's blood was drawn, and her blood alcohol level was 0.199. Dion was pronounced dead a short time after arriving at the hospital.

This matter was set for trial on April 19, 2017. However, on that date the parties informed the trial court that they reached the following resolution: defendant would plead guilty to all three counts in exchange for a *Cobbs*[2] agreement of a minimum sentence of 18 years' imprisonment. While the prosecution objected to the sentence, defendant's attorney at the time of defendant's plea asked the trial court to adopt the agreement. Defendant was placed under oath, and plea proceedings, which will be set forth in more detail below, ensued. The parties subsequently appeared for sentencing on May 25, 2017. At that time, defendant informed the trial court that she had met briefly with her counsel that morning, she had told him that her family was getting her a new attorney, and she wanted to withdraw her plea and proceed to trial. The prosecution objected to the withdrawal of defendant's plea, arguing that there was no legal basis pursuant to MCR 6.310, and pointing out that defendant had stated her satisfaction with defense counsel while tendering her plea of guilt. During the May 25, 2017 hearing, the trial court allowed defendant an extensive time, during which she was not sworn under oath, in which to voice her reasons for wanting to withdraw her guilty plea. According to defendant, she was not satisfied with her attorney's representation and she felt like she had "no choice" but to accept the *Cobbs* agreement.

After retaining new counsel, defendant filed a motion to withdraw her plea on June 8, 2017. The substance of defendant's motion was that she "was under the belief that she could withdraw her plea at sentencing if she was not comfortable at sentencing." According to defendant, citing MCR 6.310(B)(1), allowing her to withdraw her guilty plea would serve the interests of justice in this case. The trial court held a hearing on defendant's motion on June 28, 2017. During the motion hearing, defendant's newly retained defense counsel reiterated the primary argument in defendant's written motion, specifically, that defendant believed after speaking to her counsel at the time of the plea proceedings that she could withdraw her guilty plea before sentencing. Again, defendant was afforded ample opportunity, without being sworn under oath, to offer her version of the events that led to her tendering her guilty plea on April 19, 2017. The thrust of defendant's allegations was that she felt coerced by her counsel to tender the plea of guilt. Ultimately, after noting that the procedure implemented during the entry and acceptance of defendant's guilty plea was "solid[,]" the trial court nonetheless granted defendant's motion on the basis that such a decision was "in the interest of justice[.]" Specifically, the trial court, after reviewing the video recording of the April 19, 2017 plea proceedings, noted that defendant was hesitant, and had paused and looked to her counsel in

---

[2] *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993).

answering the trial court's questions. The trial court also observed that defendant's family, presumably upset by the proceedings, had left the courtroom in a disruptive manner, and defendant had apologized for that behavior

The prosecution subsequently filed an emergency interlocutory application for leave to appeal, as well as motions seeking immediate consideration, peremptory reversal, and a stay pending appeal. This Court entered an order granting the prosecution's motion for immediate consideration, application for leave to appeal, and motion for stay pending appeal. *People v Bailey*, unpublished order of the Court of Appeals, entered July 17, 2017 (Docket No. 339122). However, this Court denied the prosecution's motion for peremptory reversal "for failure to persuade the Court of the existence of manifest error requiring reversal and warranting peremptory relief without argument or formal submission." *Id*. This Court also expedited the appeal on its own motion. *Id*.

## II. ANALYSIS

### A. DEFENDANT'S MOTION TO WITHDRAW HER PLEA OF GUILT

The prosecution argues on appeal that the trial court abused its discretion when it granted defendant's motion to withdraw her guilty plea where defendant did not meet the requirements of the applicable court rule and where her plea was knowing, understanding and voluntary. We agree.

"A trial court's decision on a motion to withdraw a plea is reviewed for an abuse of discretion." *People v Cole*, 491 Mich 325, 329; 817 NW2d 497 (2012). An abuse of discretion occurs when the trial court's decision "falls outside the range of reasonable and principled outcomes[.]" *People v Swain*, 288 Mich App 609, 628; 794 NW2d 92 (2010). The trial court also abuses its discretion when it makes an error of law. *Id*. at 629. To the extent that this appeal involves the application and interpretation of MCR 6.310, we review the trial court's interpretation and application of the court rule de novo. *Cole*, 491 Mich at 330.

There is no absolute right for a defendant to withdraw a guilty plea after the trial court accepts it. *People v Eloby*, 215 Mich App 472, 474; 547 NW2d 48 (1996). However, MCR 6.310(B)(1) provides for circumstances where a plea may be withdrawn after acceptance by the trial court, but before sentencing:

> [A] plea may be withdrawn on the defendant's motion or with the defendant's consent *only in the interest of justice*, and may not be withdrawn if withdrawal of the plea would substantially prejudice the prosecutor because of reliance on the plea. If the defendant's motion is based on an error in the plea proceeding, the

court must permit the defendant to withdraw the plea if it would be required by subrule (C). [Emphasis added.]³

To support withdrawal of a plea "in the interest of justice" pursuant to MCR 6.310(B), a defendant has the burden to establish " 'a fair and just reason for withdrawal of the plea[.]' " *People v Wilhite*, 240 Mich App 587, 597; 618 NW2d 386 (2000), quoting *People v Jackson*, 203 Mich App 607, 611; 513 NW2d 206 (1994). "Fair and just reasons include reasons like a claim of actual innocence or a valid defense to the charge. Things that are not considered fair and just reasons are dissatisfaction with the sentence or incorrect advice from the defendant's attorney." *People v Fonville*, 291 Mich App 363, 378; 804 NW2d 878 (2011) (footnote omitted). Where the defendant can establish that the plea was the product of fraud, duress or coercion, this may satisfy the requirements of MCR 6.310. *People v Gomer*, 206 Mich App 55, 58; 520 NW2d 360 (1994). As a general proposition, to advance a successful motion to withdraw, the motion and its supporting proofs must demonstrate by a preponderance of the evidence "that the plea was the product of fraud, duress, or coercion." *People v Patmore*, 264 Mich App 139, 151-152; 693 NW2d 385 (2004). The motion to withdraw must include support for the defendant's claim, other than a postconviction assertion by the defendant. *Id*. at 151. If the defendant meets this burden, the burden shifts to the prosecution to demonstrate that substantial prejudice would result from withdrawal of the plea. *Wilhite*, 240 Mich App at 597. To establish substantial prejudice, the prosecution must demonstrate that "its ability to prosecute is somehow hampered by the delay." *Gomer*, 206 Mich App at 57-58, quoting *People v Spencer*, 192 Mich App 146, 151; 480 NW2d 308 (1991).

> Under MCR 6.302, to be valid, a plea must be "understanding, voluntary, and accurate." [*People v Brown*, 492 Mich 684, 688-689; 822 NW2d 208 (2012)]. To ensure that a plea is accurate, the trial court must establish a factual basis for a guilty plea. MCR 6.302(D); *People v Plumaj*, 284 Mich App 645, 648 n 2; 773 NW2d 763 (2009). "In order for a plea to be voluntary and understanding, the defendant must be fully aware of the direct consequences of the plea." *People v Blanton*, 317 Mich App 107, 118; 894 NW2d 613 (2016) (citation and quotation marks omitted). [*People v Pointer-Bey*, ___ Mich App ___, ___; ___NW2d ___ (2017) (Docket No. 333234); slip op at 3.]

Where a defendant's plea is not voluntary and understanding, the state and federal Due Process Clauses are violated. *Blanton*, 317 Mich App at 119.

As noted above, defendant asserted in the lower court, and now claims on appeal, that she was under the impression that she could withdraw her pleas at sentencing if she was uncomfortable because her counsel told her so.⁴ However, alleged incorrect advice from an

---

³ On appeal, as in the trial court, defendant does not assert that an error in the plea proceedings in contravention of MCR 6.302 occurred. Rather, the thrust of her argument is that her guilty plea was not voluntary, understanding and knowing as a result of alleged coercion by her attorney.

⁴ During the hearing on defendant's motion to withdraw her plea, defense counsel informed the trial court that defendant was not claiming that her predecessor counsel was "incompetent." In

attorney is not a "fair and just reason" to permit withdrawal. *Fonville*, 291 Mich App at 378. Thus, defendant's argument that withdrawal of her plea would serve the interests of justice as set forth in MCR 6.310(B)(1) is unavailing as a matter of law. Additionally, as a factual matter, defendant's claim that she was coerced into tendering her plea is belied by the record of the plea proceedings. Specifically, after the prosecution set forth the terms of the *Cobbs* agreement, the trial court and defendant engaged in the following colloquy as pertinent to our analysis:

> [*The Court*]: You are represented by [defense counsel] today, correct?
>
> [*The Defendant*]: Yes.
>
> [*The Court*]: *Have you had enough time today and throughout this process to meet with him and to discuss this plea agreement and this case*?
>
> [*The Defendant*]: *Yes*.
>
> [*The Court*]: When you met with him did you review the rights on the advice form that I'm holding?
>
> [*The Defendant*]: Yes.
>
> [*The Court*]: Did you read and understand those rights, Ms. Bailey[?]
>
> [*The Defendant*]: Yes.
>
> [*The Court*]: Is that your signature on this form?
>
> [*The Defendant*]: Yes.
>
> * * *
>
> [*The Court*]: Are you satisfied, Ms. Bailey, that this plea agreement is in your best interest?
>
> [*The Defendant*]: Yes, sir.
>
> [*The Court*]: Are you satisfied with your attorney's representation and his advice?
>
> [*The Defendant*]: Yes, sir.

---

her written motion, defense counsel stated that "[t]here appears to have been some kind of breakdown between the defendant" and predecessor counsel. Counsel at the time of the plea proceeding vigorously denied defendant's allegations that she was coerced into tendering her guilty plea.

Specifically addressing the *Cobbs* agreement, the trial court and defendant engaged in the following colloquy:

> [*The Court*]: Do you understand, Ms. Bailey, that your attorney has asked for a *Cobbs* evaluation?
>
> [*The Defendant*]: Yes, sir.
>
> [*The Court*]: And the *Cobbs* evaluation is that [defense counsel is] asking that . . . at the time of sentencing that I sentence you at the minimum end to 218 months.[5]
>
>                          \*    \*    \*
>
> [*The Court*]: That [defense counsel is] asking that I sentence you at a minimum of 216 months up to the life in prison amount, or any term of years up to life in prison. Do you understand that, ma'am?
>
> [*The Defendant*]: Yes.
>
> [*The Court*]: *Do you understand that if I cannot agree to the same terms once I review the pre-sentence materials and any victim impact statements, that I will allow you [to] withdraw this case or withdraw this plea and I will reset your case for trial. Do you understand?*
>
> [*The Defendant*]: Yes, sir.
>
> [*The Court*]: Is that how you wish to plead or is that how you wish to proceed?
>
> [*The Defendant*]: Yes. [Emphasis added.]

Also during the taking of her plea, defendant specifically denied that she was threatened to plead guilty, or that she was promised anything by anyone to plead guilty. Defendant also answered affirmatively when asked by the trial court if she was pleading "guilty freely and voluntarily[?]" Notably, in direct opposition to defendant's claim in the trial court and in this Court, at no point during the plea proceedings did the trial court, the prosecution or defense counsel inform defendant that she could withdraw her guilty plea before sentencing if she was in fact uncomfortable. Additionally, the trial court's comments on the record were abundantly clear that defendant would only be able to withdraw her plea with the trial court's consent if the trial court could not agree to the terms of the *Cobbs* agreement. Again, at no point during the plea proceedings did defendant articulate her supposed belief that she could withdraw her guilty plea

---

[5] At this point in the proceedings, defense counsel informed the trial court that the correct sentence requested was 216 months.

-6-

of her own accord before being sentenced. We acknowledge that following the acceptance of her plea, defendant alleged on the record during the June 28, 2017 hearing on her motion to withdraw her plea that she accepted the *Cobbs* agreement "under a great amount of duress" from her counsel at the time, and that she did not believe she was afforded adequate representation. However, we have closely reviewed the transcript of the plea proceedings, and rather than support these assertions, the record reflects that defendant expressed satisfaction with her counsel's performance, expressed that her plea was freely and voluntarily made, and stated her belief that the plea agreement was in her best interests. Therefore, contrary to defendant's assertions in her brief on appeal, the record of the plea proceedings further demonstrates that defendant's guilty pleas were knowing, voluntary, and understanding and yields no indication that defendant was in any way threatened or coerced into tendering her plea of guilt. In sum, the record does not show that defendant's plea did not "represent[ ] a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v Alford*, 400 US 25, 31; 91 S Ct 160; 27 L Ed 162 (1970).

As the trial court recognized during the hearing on defendant's motion to withdraw her plea, it properly complied with the requirements set forth in MCR 6.302 before accepting defendant's guilty plea.[6] Specifically, defendant testified that she could read, write, and understand English, and is a United States citizen. She was not under the influence of drugs, alcohol, or any medication that would impact her ability to tender a knowing, voluntary or understanding plea of guilt. Defendant reviewed and signed the advice of rights form. Defendant stated that she understood the maximum penalties for the three charges. As noted above, she affirmatively stated that she was satisfied (1) that the plea agreement was in her best interest, and (2) with her counsel's representation. Defendant stated that she understood that the charges would become convictions in her criminal and driving records. Defendant understood that by pleading guilty, she would not be entitled to an appeal as of right. Thus, defendant's contentions challenging her plea as being in some manner coerced or lacking in understanding are simply not supported by the record of the plea proceedings.

Additionally, we note that, as a general proposition, it is improper for defendant to subsequently make allegations that she was essentially coerced into pleading guilty by her defense counsel, and contradict her statements made under oath during guilty plea proceedings. *People v White*, 307 Mich App 425, 429; 862 NW2d 1 (2014). Under facts similar to this case, this Court affirmed the trial court's denial of the defendant's request for an evidentiary hearing where the defendant contended, and produced affidavits from himself and relatives in support, that he was pressured into tendering a plea of guilt by defense counsel, and where he also alleged that trial counsel had not prepared a defense and was unprepared for trial. *Id*. During his plea proceedings, the defendant expressed satisfaction with trial counsel's performance and the advice given to him, and noted that it was his own choice to plead guilty, and "no promises, threats or inducements" compelled his guilty plea. *Id*. This Court noted that the statements in defendant's

---

[6] The trial court specifically stated, "I don't think there are any issues with regard to the plea. I think the plea was a solid plea. I know how I work through my pleas with regard to everything that I put on the record, and we were very thorough in the plea that was taken."

own affidavit "directly contradict[ed] his testimony at the plea hearing." *White*, 307 Mich App at 430. In *White*, this Court turned to an earlier decision of this Court in *People v Serr*, 73 Mich App 19, 25-26; 250 NW2d 535 (1976), stating that *Serr* stands for the proposition "that when a plea is entered in accordance with the applicable court rules, a trial court is barred from considering testimony or affidavits inconsistent with statements made during the plea hearing." *White*, 307 Mich App at 430. This Court quoted the following language from *Serr*, which was also relied on by the trial court in *White*:

> It is the opinion of this court that where a defendant has been found guilty by reason of his own statements as to all of the elements required to be inquired into by GCR 1963, 785.7, and his attorney has also confirmed the agreement and the defendant has been sentenced, neither he nor his attorney will be permitted thereafter to offer their own testimony to deny the truth of their statements made to induce the court to act. To do so would be to permit the use of its own process to create what amounts to a fraud upon the court. This is based on public policy designed to protect the judicial process. [*White*, 307 Mich App at 430, quoting *Serr*, 73 Mich App at 28.]

Similarly, in *People v Armisted*, 295 Mich App 32, 47, 48; 811 NW2d 47 (2011), the defendant claimed ineffective assistance of counsel, alleging that his attorney incorrectly informed him that he would face a minimum sentence of 11 years' imprisonment if tried and convicted, essentially using this misinformation to coerce the defendant to accept a plea deal with the prosecution. This Court noted that the defendant's trial counsel appeared to have been mistaken with respect to the minimum sentence at issue, but that "irrespective of any misstatements by counsel, the fact remains that [the] defendant would have been subject to a much greater maximum sentence than the one he actually received had he been tried and ultimately convicted." *Id.* at 49. This Court also rejected defendant's claim of ineffective assistance of counsel during the plea proceedings on the following basis:

> Moreover, defendant does not argue that any failures of trial counsel actually kept him from understanding the plea to which he agreed. Indeed, defendant testified under oath at the plea proceeding that he fully understood the plea and sentencing agreement. Just as a party or witness may not create a factual dispute by submitting an affidavit that contradicts his or her own sworn testimony or prior conduct, *Dykes v William Beaumont Hosp*, 246 Mich App 471, 480; 633 NW2d 440 (2001); *Palazzola v Karmazin Products Corp*, 223 Mich App 141, 155; 565 NW2d 868 (1997), we conclude that defendant's affidavit dated February 14, 2011, was insufficient to contradict or overcome his previous sworn statements at the plea proceeding of April 12, 2010. Given defendant's unequivocal confirmation in open court that he understood the plea and sentencing agreement, we cannot conclude that defendant's counsel was ineffective. See [*People v*

*Swirles (After Remand)*, 218 Mich App 133, 138–139; 553 NW2d 357 (1996)]. [*Armisted*, 295 Mich App at 49.][7]

While *Serr*, *White* and *Armisted* involved factual scenarios where the defendant had been in fact sentenced following the plea of guilt, we observe that the language from the *Serr* Court's opinion is persuasive here, where defendant, after tendering a knowing, voluntary and understanding plea in open court, has sought to subsequently undermine the integrity of the plea proceedings by questioning the truth of her statements made under oath during the plea proceedings. Moreover, the *Armisted* Court's opinion does not yield any indication that its ruling is limited to factual situations where the defendant has been sentenced. *Id*. at 48-49. Additionally, in *White*, the defendant, like defendant here, sought to withdraw his plea before sentencing. *White*, 307 Mich App at 428.[8] We therefore conclude that the trial court's determination that defendant met the requirements of MCR 6.310 was an error of law, and therefore its decision to allow defendant to withdraw her plea of guilt was an abuse of discretion. *Cole*, 491 Mich at 329; *Swain*, 288 Mich App at 628.

## B. FACTUAL BASIS FOR DEFENDANT'S GUILTY PLEA

In addition, defendant argues on appeal that withdrawal of her guilty plea was appropriate because the trial court did not ensure that a factual basis for second-degree murder was established pursuant to MCR 6.302.[9] Defendant did not raise this issue in the trial court, therefore it is not preserved for appellate review. *People v Metamora Water Serv*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Additionally, in our order granting the prosecution's application for leave, we stated that "[t]his appeal is limited to the issues raised in the application and supporting brief." *People v Bailey*, unpublished order of the Court of Appeals, entered July 17, 2017 (Docket No. 339122). Nonetheless, we will briefly address this unpreserved issue in the interests of finality and to provide clarity for the parties on remand.

---

[7] In *Armisted*, the defendant also sought to withdraw his no-contest plea on the basis that it was involuntary where trial counsel allegedly coerced him into accepting a plea deal by threatening defendant "with the prospect of a longer prison sentence if he did not agree to the plea deal." *Id*. at 46. This Court noted that the defendant did not argue that he did not understand his plea, particularly where during the plea proceedings he had stated that he understood the plea bargain, and that he had not been threatened or offered favors or promises of leniency for entering into the plea bargain. *Id*. However, where the defendant had not filed a motion to withdraw his plea in the circuit court, appellate consideration of this issue was precluded. *Id*. at 48.

[8] While the *White* Court was precluded from granting defendant relief regarding the denial of his request for an evidentiary hearing on the basis of the law of the case where this Court had denied defendant's motion to remand, it nonetheless analyzed the issue and concluded that the trial court's decision to not grant defendant's request for an evidentiary hearing was not an abuse of discretion. *Id*. at 428-429.

[9] Defendant does not challenge the factual bases laid for the other two charges.

"We review unpreserved claims, both constitutional and unconstitutional, for outcome-determinative plain error." *Armisted*, 295 Mich App at 46.

MCR 6.302(D)(1) provides: "If the defendant pleads guilty, the court, by questioning the defendant, must establish support for a finding that the defendant is guilty of the offense charged or the offense to which the defendant is pleading." The elements of second-degree murder are " '(1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse.' " *People v Roper*, 286 Mich App 77, 84; 777 NW2d 483 (2009), quoting *People v Mayhew*, 236 Mich App 112, 125; 600 NW2d 370 (1999). The definition of "malice" is "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Roper*, 286 Mich App at 84, quoting *People v Goecke*, 457 Mich 442, 464; 579 NW2d 868 (1998). Malice can be inferred from evidence that the defendant " 'intentionally set a force in motion likely to cause death or great bodily harm.'" *Roper*, 286 Mich App at 84, quoting *Mayhew*, 236 Mich App at 125.

> The offense of second-degree murder does not require an actual intent to harm or kill, but only the intent to do an act that is in obvious disregard of life-endangering consequences. [*Roper*, 286 Mich App at 84 (citations omitted).]

At the plea proceedings, defense counsel questioned defendant to lay the factual basis for all three charges. Regarding Count 1, second-degree murder, the exchange was as follows:

> [*Defense Counsel*]: As to Count One. Were you operating a motor vehicle in the City of Eastpointe, [C]ounty of Macomb, State of Michigan on June 8, 2016[?]
>
> [*The Defendant*]: Yes.
>
> [*Defense Counsel*]: While you were operating this vehicle[,] were you under the influence of intoxicating liquor or beer[?]
>
> [*The Defendant*]: Yes.
>
> [*Defense Counsel*]: And at the time that you were so operating[,] were you involved in a motor vehicle collision with another car[?]
>
> [*The Defendant*]: Yes.
>
> [*Defense Counsel*]: And as a result of that collision the operator of that car, a certain Pavlos Dion, died[?]
>
> [*The Defendant*]: Yes.
>
> [*Defense Counsel*]: At the time you were operating did you know based on your prior experience that driving while under the influence of liquor could cause a risk of great bodily harm or death as a result of your actions[?]

[*The Defendant*]:  Yes.

[*Defense Counsel*]:  As to Count One.

The record establishes the following facts: (1) Dion died, (2) Dion died as a result of the collision with defendant's car, (3) defendant had "the intent to do an act, in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm[,]" and (4) she did this without justification or excuse, particularly so given her criminal history.  See *Roper*, 286 Mich App at 84 (citation and quotation marks omitted).  Thus, defendant's challenge to the factual basis for her plea of guilt to second-degree murder is without merit.

### III.  CONCLUSION

We reverse the trial court's order granting defendant's motion to withdraw her plea of guilt to all three charges, and remand for reinstatement of defendant's plea of guilt with respect to all three charges and direct the trial court to proceed with sentencing.  We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Karen M. Fort Hood

-11-